UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ADAM PRITCHARD, EDWARD ROBINSON, and JULENNE TUCKER, both individually and on behalf of a class of others similarly situated, | : : : : : | |
| Plaintiffs, | : : | **04  CV  0534** c/s |
| v. | : : | Civil Action Number |
| THE COUNTY OF ERIE, PATRICK M. GALLIVAN, both individually and in his official capacity as Sheriff of the County of Erie, TIMOTHY HOWARD, both individually and as Undersheriff of the County of Erie, DONALD J. LIVINGSTON, both individually and as Acting Superintendent of the Erie County Correctional Facility, ROBERT HUGGINS, both individually and as Deputy Superintendent of the Erie County Correctional Facility, and H. McCARTHY GIBSON, both individually and as Superintendent of the Erie  County Holding Center, | : : : : : : : : : : : : : : : : | **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |
| Defendants. | : : | |

FILED
2004 JUL 21  PM 5: 15
U.S. DISTRICT COURT
W.D.N.Y. BUFFALO

## INTRODUCTION

This is a class action brought to redress the deprivation by Defendants of rights

secured to the Plaintiffs and proposed Class by the United States Constitution and the

laws of the United States of America.  For the past several years, the Erie County

Sheriff's Department has had a policy of strip-searching all individuals who enter either

the Erie County Holding Center and/or the Erie County Correctional Facility, regardless

1

of the crime upon which they are charged.  Upon information and belief, this policy is, in part, derived from the written procedures of the Erie County Sheriff's Department, and was promulgated by senior Department officials; specifically, Defendants Sheriff Patrick Gallivan, Undersheriff Timothy Howard, Acting Superintendent Daniel J. Livingston, Deputy Superintendent Robert Huggins, and Superintendent H. McCarthy Gibson.

It has been well established in this judicial circuit for many years that individuals charged with misdemeanors or violations cannot be strip-searched absent particularized suspicion that they possess weapons or contraband.  In short, the policy of Erie County and the Erie County Sheriff's Department to force those charged with minor crimes to undergo the indignities of a strip search upon entry into the Erie County Holding Center and/or the Erie County Correctional Facility is not only clearly illegal, but is insensitive and unnecessary.

Adam Pritchard, Edward Robinson, and Julenne Tucker bring this action on behalf of themselves, and on behalf of a class of thousands of others who were strip searched after being charged with petty crimes, to vindicate the clear and unnecessary violation of their civil rights and those of the class members they propose to represent. All three of these individuals were charged with misdemeanor and/or violation offenses, and all were subject to strip searches, in violation of their right against unreasonable searches under the Fourth Amendment of the United States Constitution.  They seek monetary damages for themselves and each member of the proposed class, a declaration that the Sheriff's Department's policies are unconstitutional, and an injunction precluding Erie County and the Erie County Sheriff's Department from continuing to violate the

rights of those placed into their custody.  With this as a background, Plaintiffs Adam Pritchard, Edward Robinson, and Julenne Tucker complain as follows:

## JURISDICTION

1.  This Court has jurisdiction over this action under the provisions of 28 U.S.C. § 1331, 1341 & 1343 because it is filed to obtain compensatory damages, punitive damages, and injunctive relief for the deprivation, under color of state law, of the rights of citizens of the United States secured by the Constitution and federal law pursuant to 42 U.S.C. §§ 1981 & 1983.  This Court also has jurisdiction over this action under the provisions of 28 U.S.C. § 2201, as it is filed to obtain declaratory relief relative to the Constitutionality of the policies of a local government.

2.  Venue is proper under 28 U.S.C. § 1391(e)(2) because the events giving rise to Plaintiffs' claims and those of proposed class members occurred in this judicial district.

## PARTIES

3.  Plaintiff Adam Pritchard ("Pritchard") is 37 years old and resides in Erie County.  Pritchard was arrested on or about May 13, 2003 and placed into the Erie County Correctional Facility on a Violation of Parole for leaving Erie County without authorization and using a cell phone.  Mr. Pritchard was not charged with any crime at the time of his arrest, only with a violation of the conditions of his parole.  Mr. Pritchard was on parole after being convicted of the crime of Attempted Assault in the Second Degree, a Class E Non-Violent Felony offense.

4.   Plaintiff Edward Robinson ("Robinson") is 20 years old and resides in Erie County, New York.  Robinson was arrested on or about May 14, 2004 and transported to the Erie County Holding Center on charges of failing to pay a fine related to a traffic infraction (driving with a suspended license).   Upon information and belief, Mr. Robinson was held in the Erie County Holding Center on one additional occasion during the class period.

5.   Plaintiff Julenne Tucker ("Tucker") is 33 years old and resides in Cook County, Illinois.  On or about June 1, 2004, Tucker was arrested and placed in the Erie County Holding Center on charges Trespassing in the First Degree (a class A misdemeanor).

6.   Defendant County of Erie (the "County") is a county government organized and existing under the laws of the State of New York.  At all times relevant hereto, the County, acting through its Sheriff's Department, was responsible for the policies, practices, supervision, implementation and conduct of all matters pertaining to the Erie County Holding Center and the Erie County Correctional Facility and was responsible for the appointment, training, supervision and conduct of all Sheriff's Department personnel, including those working in the Erie County Jail.  In addition, at all relevant times, the County was responsible for enforcing the rules of the Erie County Holding Center and the Erie County Correctional Facility, and for ensuring that Sheriff's Department personnel employed in the Jail obey the Constitution and laws of the United States and of the State of New York.

7.   The Erie County Sheriff's Department (the "Sheriff's Department") is a County Sheriff's Department organized and existing under the laws of the State of New

4

York.  Although not a legal entity for the purposes of litigation, the Department is listed as a party for the purposes of identification.  At all times relevant hereto, the Sheriff's Department was responsible for operating, organizing, overseeing and administering the Erie County Holding Center ("ECHC") and the Erie County Correctional Facility ("ECCF").  At all times relevant hereto, Defendant Sheriff's Department, together with the County of Erie, was responsible for the polices, practices, supervision, implementation and conduct of all matters pertaining to the ECHC and the ECCF, and was responsible for the appointment, training, supervision and conduct of all Sheriff's Department personnel, including those working in the ECHC and the ECCF.  In addition, at all times relevant hereto, Defendant Sheriff's Department, together with the County of Erie, was responsible for enforcing the rules of the Erie County Holding Center and the Erie County Correctional Facility, and for ensuring that Sheriff's Department personnel employed in the ECHC and the ECCF obeyed the Constitution and laws of the United States and of the State of New York.

8.  Defendant Patrick M. Gallivan ("Sheriff Gallivan") is the duly elected Sheriff of Erie County, and, as such, is a policy maker with respect to the treatment of pre-trial and other detainees over which the ECHC and the ECCF exercises custodial or other control.  Sheriff Gallivan's principal place of business is 10 Delaware Avenue, Buffalo, NY 14202.  Sheriff Gallivan is made a Defendant in this action in both his individual and official capacities.

9.  Defendant Timothy Howard ("Undersheriff Howard") is the duly appointed Undersheriff of Erie County, and, as such, is a policy maker with respect to the treatment of pre-trial and other detainees over which the ECHC and the ECCF exercises custodial

or other control.   Undersheriff Howard's principal place of business is 10 Delaware Avenue, Buffalo, NY 14202. Timothy Howard is made a Defendant in this action in both his individual and official capacities.

10. Defendant Donald J. Livingston ("Superintendent Livingston") is the duly appointed Acting Superintendent of the Erie County Correctional Facility and is the officer in charge of the operation of the Erie County Correctional Facility.  As such, Superintendent Livingston is a policy maker with respect to the treatment of pre-trial and other detainees over which the ECCF exercises custodial or other control. Superintendent Livingston's principal place of business is 11581 Walden Avenue, Alden, NY 14004.  Superintendent Livingston is made a Defendant in this action in both his individual and official capacities.

11. Defendant Robert Huggins ("Deputy Superintendent Huggins") is the duly appointed Deputy Superintendent of the Erie County Correctional Facility.  Deputy Superintendent Huggins is second in command to Superintendent Livingston in responsibility for jail operations.  As such, Deputy Superintendent Huggins is a policy maker with respect to the treatment of pre-trial and other detainees over which the ECCF exercises custodial or other control.  Deputy Superintendent Huggins's principal place of business is 11581 Walden Avenue, Alden, NY 14004.  Deputy Superintendent Huggins is made a Defendant in this action in both his individual and official capacities.

12. Defendant H. McCarthy Gipson ("Superintendent Gibson") is the duly appointed Superintendent of the Erie County Holding Center and is the officer in charge of the operation of the Erie County Holding Center.  As such, Superintendent Gibson is a policy maker with respect to the treatment of pre-trial and other detainees over which the

ECHC exercises custodial or other control.  Superintendent Gibson's principal place of business is 10 Delaware Avenue, Buffalo, NY  14202  Superintendent Livingston is made a Defendant in this action in both his individual and official capacities.

13. Collectively,   Sheriff   Gallivan,   Undersheriff   Howard,   Superintendent Livingston, Deputy Superintendent Huggins and Superintendent Gibson will be referred to as the "Policy Making Defendants."

## CLASS ACTION ALLEGATIONS

14. Plaintiffs bring this action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and a class of similarly situated individuals who were charged with misdemeanors or minor crimes and were strip searched upon their entry into the Erie County Holding Center and the Erie County Correctional Facility.

15. The class that Plaintiffs seek to represent is defined as follows:

> All persons who have been or will be placed into the custody of the Erie County Correctional Facility and/or the Erie County Holding Center after being charged with misdemeanors, violations, violations of probation or parole, traffic infractions, civil commitments or other minor crimes and were or will be strip searched upon their entry into the Erie County Correctional Facility and/or the Erie County Holding Center pursuant to the policy, custom and practice of the Erie County Sheriff's Department and the County of Erie. The class period commences on July 22, 2001 and extends to the date on which the Erie County Sheriff's Department and/or the County of Erie are enjoined from, or otherwise cease, enforcing their unconstitutional policy, practice and custom of conducting strip searches absent reasonable suspicion. Specifically excluded from the class are Defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees or assignees.

16. This action has been brought and may properly be maintained as a class action under Federal law and satisfies the numerosity, commonality, typicality and adequacy requirements for maintaining a class action under Fed. R. Civ. P. 23(a).

17. The members of the class are so numerous as to render joinder impracticable. Upon information and belief, there are thousands of people arrested for misdemeanors and violations who are placed into the custody of the Erie County Correctional Facility and/or the Erie County Holding Center every month – all of whom are members of the proposed class. Upon information and belief, the size of the proposed class totals at least

8

20,000 individuals, some of whom have had their civil rights violated on multiple occasions.

18. Upon information and belief, joinder of all of these individuals is impracticable because of the large number of class members and the fact that class members are likely dispersed over a large geographical area, with some members presently residing outside of Erie County and this Judicial District. Furthermore, upon information and belief, many members of the class are low-income persons, may not speak English, and likely would have great difficulty in pursuing their rights individually.

19. Common questions of law and fact exist as to all members of the Class, in that they all had their right to be free from unreasonable searches violated by Defendants' conducting strip searches absent particularized suspicion. All members of the class were charged with misdemeanors or violations when placed into the custody of the Erie County Correctional Facility and/or the Erie County Holding Center, and all were illegally strip searched in violation of the clearly established law in this judicial circuit.

20. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the class sustained damages arising out of Defendants' course of conduct. The harms suffered by the Plaintiffs are typical of the harms suffered by the class members.

21. The representative Plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the Class. Plaintiffs have no interests that are adverse to the interests of the members of the Class.

22. Plaintiffs have retained counsel who has substantial experience and success in the prosecution of class action and civil rights litigation. The named Plaintiffs are being

represented by Elmer Robert Keach, III; Bruce Menken and Jason Rozger of Berenbaum Menken & Ben-Asher, LLP; Gary E. Mason and Charles Schneider of The Mason Law Firm, PLLC; and Jonathan Cuneo and Charles LaDuca of Cuneo Waldman & Gilbert, LLP. Mr. Keach is an experienced civil rights and class action attorney who has litigated a wide variety of civil rights actions in federal courts, and has litigated class action lawsuits in state and federal courts in five states. Mr. Keach has successfully litigated strip search cases against the Troy City Police Department, the Rensselaer County Sheriff's Department and the Schenectady City School District, and is lead counsel in several strip search class actions pending before the U.S. District Court for the Northern District of New York.

23. Bruce Menken and Jason Rozger are both experienced civil rights attorneys from New York City, having litigated scores of civil rights cases against a number of Defendants, including one prison brutality case presently pending in this District. Mr. Menken and Mr. Rozger have successfully represented many victims of illegal strip searches, including several who opted out of the recent class action litigation against the City of New York. Mr. Menken and Mr. Rozger have both served as co-counsel in similar class action litigation pending before the U.S. District Court for the Northern District of New York.

24. Gary E. Mason is one of this country's premier class action attorneys, with offices in Washington, DC. Mr. Mason has successfully litigated class actions against Fortune 500 companies in both state and federal court in over a dozen jurisdictions, including gaining a settlement for a class of purchasers of defective polybutylene pipe of $ 950 million dollars. Mr. Mason has served as lead or co-counsel in numerous high

profile class actions, including In Re The Exxon Valdez, In Re Diet Drugs Product Liability Litigation and In Re Synthetic Stucco (EIFS) Product Liability Litigation. In addition to his extensive experience as a class action and environmental lawyer, Charles Schneider is a former trial attorney with the U.S. Department of Justice's Civil Rights Division and has successfully litigated a series of cases involving corrections misconduct. Mr. Mason and Mr. Schneider have both served as co-counsel in similar class action litigation pending before the U.S. District Court for the Northern District of New York.

25. Jonathan Cuneo and Charles LaDuca of Cuneo Waldman & Gilbert, LLP have extensive experience before state and federal trial and appellate courts, before law enforcement authorities and in proceedings before the United States Congress. Cuneo and LaDuca have successfully prosecuted several complex class actions, including cases involving securities fraud, antitrust violations, consumer protection and products liability in state and federal courts throughout the United States. Mr. Cuneo and Mr. LaDuca have both served as co-counsel in a similar class action pending before the U.S. District Court for the Northern District of New York.

26. In short, Plaintiffs' counsel has the resources, expertise and experience to successfully prosecute this action against Erie County, the Erie County Sheriff's Department and the Policy Making Defendants. Counsel for Plaintiffs knows of no conflicts among members of the class, or between counsel and members of the class.

27. This action, in part, seeks declaratory and injunctive relief. As such, the Plaintiffs' seek class certification under Fed. R. Civ. P. 23(b)(2), in that all class members were subject to the same policy requiring the illegal strip searches of individuals charged with misdemeanor or minor crimes and placed into the custody of the Erie County Jail.

In short, the County of Erie, the Erie County Sheriff's Department, the Policy Making Defendants and Erie County Corrections Officers acted on grounds generally applicable to all class members.

28. In addition to certification under Rule 23(b)(2), and in the alternative, Plaintiffs seek certification under Rule 23(b)(3).

29. Common questions of law and fact exist as to all members of the Class, and predominate over any questions that affect only individual members of the Class. These common questions of law and fact include, without limitation, the common and predominate question of whether the Defendants' written and/or *de facto* policy of strip searching all individuals charged with misdemeanors or minor crimes and committed to the ECCF and/or the ECHC is a violation of the Fourth and Fourteenth Amendments to the United States Constitution, and whether such a written and/or *de facto* policy existed during the class period.

30. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all of the individual members of the class is impracticable given the large number of class members and the fact that they are dispersed over a large geographical area. Furthermore, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them. The cost to the federal court system of adjudicating thousands of individual cases would be enormous. Individualized litigation would also magnify the delay and expense to all parties and the court system. By contrast, the conduct of this action as a class action in this District presents far fewer

management difficulties, conserves the resources of the parties and the court system, and protects the rights of each member of the Class.

31. Upon information and belief, there are no other actions pending to address the Defendants' flagrant violation of the civil rights of thousands of individuals, even though the Defendants have maintained their illegal strip search regimen for at least the past several years, with the practice being declared unconstitutional in this judicial circuit in 1986.

32. In the alternative to certification under Fed. R. Civ. P. 23(b)(3), Plaintiffs also seek partial certification under Fed. R. Civ. P. 23(c)(4).

## FACTS

### Facts Applicable to the Class Generally

33. The Fourth Amendment of the United States Constitution prohibits state officials, such as the Policy Making Defendants in this action and the Corrections Officers they supervise, from performing strip searches of arrestees who have been charged with misdemeanors or other minor crimes unless the officer has reasonable suspicion to believe that the arrestee is concealing a weapon or contraband.

34. Upon information and belief, the County of Erie, the Erie County Sheriff's Department and the Policy Making Defendants have instituted a written and/or *de facto* policy, custom or practice of strip searching all individuals who enter the custody of the ECCF and/or the ECHC, regardless of the nature of their charged crime and without the presence of reasonable suspicion to believe that the individual was concealing a weapon or contraband.

35. Upon information and belief, the County of Erie, the Erie County Sheriff's Department and the Policy Making Defendants have instituted a written and/or *de facto* policy, custom or practice of conducting visual body cavity searches (visual inspection of the vaginal and rectal cavities) on all individuals who enter the custody of the ECCF and/or the ECHC, regardless of the individual characteristics or the nature of their charged crime.  For purposes of this Complaint, strip and visual cavity searches are collectively referred to as "strip searches."

36. The County of Erie, the Erie County Sheriff's Department, and the Policy Making Defendants know that they may not institute, enforce or permit enforcement of a policy or practice of conducting strip searches without particularized, reasonable

14

suspicion. This judicial circuit has stated repeatedly that state officials may not strip search individuals charged with misdemeanors or violations absent particularized, reasonable suspicion, with this principle being clearly established in 1986 by *Weber v. Dell*, 804 F.2d 796 (2d Cir. 1986).

37. The Defendants' written and/or *de facto* policy, practice and custom mandating wholesale strip searches of all misdemeanor and violation arrestees has been promulgated, effectuated and/or enforced in bad faith and contrary to clearly established law.

38. Upon information and belief, not only is the policy of strip searching illegal, but the manner in which individuals are searched is also impermissible. For example, upon information and belief, individuals are strip searched in the presence of corrections officers, jail employees and/or other arrestees, some of whom are of the opposite gender.

39. Reasonable suspicion to conduct a strip search may only emanate from the particular circumstances antecedent to the search, such as the nature of the crime charged, the particular characteristics of the arrestees, and/or the circumstances of the arrest.

40. Upon information and belief, the County of Erie, the Erie County Sheriff's Department and the Individual Defendants have promulgated, implemented, enforced, and/or failed to rectify a written and/or *de facto* policy, practice or custom of strip searching **all** individuals placed into the custody of the Erie County Jail without any requirement of reasonable suspicion, or indeed suspicion of any sort. This written and/or *de facto* policy made the strip searching of pre-trial detainees routine; neither the nature of the offense charged, the characteristics of the arrestee, nor the circumstances of a

15

particular arrest were relevant to the enforcement of the policy, practice and custom of routine strip searches.

41. Pursuant to this written and/or *de facto* policy, each member of the Class, including every named Plaintiff, was the victim of a routine strip search upon their entry into the ECCF and/or the ECHC.  These searches were conducted without inquiry into or establishment of reasonable suspicion, and in fact were not supported by reasonable suspicion.   Strip searches are conducted for individuals arrested for, among other innocuous offenses, traffic violations and Trespassing.

42. As a direct and proximate result of the unlawful strip search conducted pursuant to this written and/or *de facto* policy, the victims of the unlawful strip searches – each member of the class, including every named Plaintiff – has suffered or will suffer psychological pain, humiliation, suffering and mental anguish.

### Facts Applicable to the Named Plaintiffs

*A.*     *Julenne Tucker*

43. Mr. Tucker's experience is representative.  On or about June 1, 2004, Mr. Tucker was charged with Criminal Trespassing in the First Degree, a Class A misdemeanor.  Mr. Tucker subsequently resolved these charges by pleading guilty to Criminal Trespassing in the Second Degree, a Class B Misdemeanor, and received 17 days incarceration as a penalty (time served to the date of his first appearance).  Mr. Tucker is presently 33 years old.  He was taken into custody by the Town of Hamburg Police Department.

44. At approximately 1:30 PM on or about June 2, 2004, Mr. Tucker was transported to the Erie County Holding Center on $250.00 bail.  Approximately three

hours later, Mr. Tucker was moved into a holding cell in the intake area of the Holding Center and ordered to remove his clothing. As Corrections Officers watched, Mr. Tucker removed his clothing.

45. A Corrections Officer then instructed Mr. Tucker to turn his back to them, squat and spread the lobes of his buttocks to allow for a visual inspection of his rectum. Mr. Tucker was subsequently instructed to lift his feet, turn around and lift his testicles. After a Corrections Officer later inspected his mouth and hair, Tucker was provided with a jail uniform.

46. This search was conducted in the presence of three other detainees, who were also being strip searched at the same time as Mr. Tucker. Three Corrections Officers were present during this search, and were themselves searching other detainees.

47. On this particular occasion, there was no reasonable suspicion to believe that Mr. Tucker was concealing a weapon or other contraband. Indeed, no inquiry was made of Mr. Tucker that could have given rise to the requisite reasonable suspicion. Moreover, because Mr. Tucker had already been in the custody of police officers from the Town of Hamburg, the Corrections Officers in question knew or should have known that Mr. Tucker had already been subjected to a search incident to arrest that would have revealed any weapons or contraband.

48. Mr. Tucker has three previous felony convictions, and it likely that he could be arrested again and placed in the custody of the Erie County Sheriff.

49. As a direct and proximate result of the unlawful strip search conducted pursuant to County and Sheriff's Department policy, practice and custom, Mr. Tucker has

suffered and continues to suffer psychological pain, humiliation, suffering and mental anguish.

B.    *Edward Robinson*

50. Mr. Robinson's experience is representative as well.  On or about May 14, 2004, Mr. Robinson was arrested on a bench warrant, the basis for the warrant being that he had failed to pay a $200.00 fine assessed after a conviction for driving on a suspended license (a traffic infraction).  Mr. Robinson subsequently resolved the bench warrant by serving four days in the Erie County Holding Center.  Mr. Robinson is presently 20 years old.   Mr. Robinson was taken into custody by the Town of Lackawanna Police Department.

51. At approximately 12:00 PM on May 15, 2004, Mr. Robinson was transported to the Erie County Holding Center.  Approximately 5 minutes after arriving, Mr. Robinson was moved into a room in the intake area and told to face "the eyes" on the wall.  He was then instructed to remove all of his clothing.  As a Corrections Officer watched, Mr. Robinson removed his clothing with the exception of his underpants.  Mr. Robinson was then instructed to pull the waist band of his undershorts forward, whereupon the Corrections Officer inserted a gloved hand into Robinson's underpants and physically examined his groin, including the sides of his testicles.  Mr. Robinson was then instructed to lower his underpants, bend over and "spread your cheeks."  Mr. Robinson complied, and the Corrections Officer then conducted a visual inspection of Mr. Robinson's rectal cavity.

52. Mr. Robinson then put his street clothes back on, and was moved to a holding area known as "the bullpen."

18

53. This initial search was conducted in the presence of his transporting officer from the Town of Lackawanna and a female Corrections Officer, both of whom had a clear view of the area where Mr. Robinson was searched.

54. Several hours later, Mr. Robinson was strip searched again upon receiving his jail uniform.

55. Upon information and belief, Mr. Robinson was admitted to the Erie County Holding Center on another occasion during the class period, and was also subjected to a strip search at that time.

56. There was no reasonable suspicion to believe that Mr. Robinson was concealing a weapon or other contraband. Indeed, no inquiry was made of Mr. Robinson that could have given rise to the requisite reasonable suspicion.

57. As a direct and proximate result of this unlawful strip search conducted pursuant to County and Sheriff's Department policy, practice and custom, Mr. Robinson has suffered and continues to suffer psychological pain, humiliation, suffering and mental anguish.

C.    *Adam Pritchard*

58. Mr. Pritchard's experience is representative as well. On or about May 13, 2003, Mr. Pritchard was charged with violating the conditions of his parole – namely, he was violated for leaving Erie County without permission and for using a cell phone in contradiction to the conditions of his parole. Mr. Pritchard was taken into custody by a New York State Parole Officer.

59. At approximately 4:00 PM on the day of his arrest, Mr. Pritchard was transported to the Erie County Correctional Facility. Soon thereafter, Mr. Pritchard was

moved into a small room in the intake area where a Corrections Officer sat at a desk. At the time of Mr. Pritchard's admission, there were two Corrections Officers and three detainees ("intake workers") present in the small room. The Corrections Officer instructed Mr. Pritchard to remove each piece of his clothing separately while Pritchard stood in front of him, including Pritchard's underpants. The room where the search was performed is in plain view of the chairs utilized for intake of new detainees, and is also in plain view of the facility control room where female Corrections Officers are sometimes assigned.

60. The Corrections Officer then instructed Mr. Prichard to "lift" his testicles, then lift his penis separately from his testicles. Pritchard then was instructed to turn around, place his hands against the wall, and lift his feet. He was then required bend at the waist and spread the lobes of his buttocks to allow the Corrections Officer to visually examine his rectum. Pritchard then was required to open his mouth for an inspection, and subsequently received the jail uniform.

61. Without stating or implying that Mr. Pritchard is a habitual criminal, Mr. Pritchard has been arrested on a number of occasions in the past. Consequently, there is a possibility beyond mere speculation that he will be rearrested in the future, making it likely that he will again be subjected to the same illegal search procedure.

62. There was no reasonable suspicion to believe that Mr. Pritchard was concealing a weapon or other contraband. Indeed, no inquiry was made of Mr. Pritchard that could have given rise to the requisite reasonable suspicion. Moreover, because Mr. Pritchard had already been in the custody of a Parole Officer of the New York State Division of Parole, the Corrections Officer in question knew or should have known that

Mr. Pritchard had already been subjected to a search incident to arrest that would have revealed any weapons or contraband.

63. As a direct and proximate result of this unlawful strip search conducted pursuant to County and Sheriff's Department policy, practice and custom, Mr. Pritchard has suffered and continues to suffer psychological pain, humiliation, suffering and mental anguish.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

#### Violation of Constitutional Rights Under Color of State Law

#### -- Unreasonable Search and Failure to Implement Municipal Policies to Avoid Constitutional Deprivations Under of Color of State Law --

64. Plaintiffs incorporate by reference and reallege each and every allegation stated in paragraphs 1 through 63.

65. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches by law enforcement officers, and prohibits officers from conducting strip searches of individuals arrested for misdemeanors or violations absent some particularized suspicion that the individual in question has either contraband or weapons.

66. The actions of Defendants detailed above violated Plaintiffs' rights under the United States Constitution.  Simply put, it was not objectively reasonable for Erie County Corrections Officers to strip search Plaintiffs and class members based on their arrests for misdemeanor/violation charges.  It was also not objectively reasonable for the Policy Making Defendants to order/direct Erie County Corrections Officers to conduct such searches.

67. These strip searches were conducted pursuant to the policy, custom or practice of the County of Erie and the Erie County Sheriff's Department.  As such, the County of Erie is directly liable for the damages of the named Plaintiffs and members of the Class.

68. Upon information and belief, Sheriff Gallivan, Undersheriff Howard, Superintendent Livingston, Deputy Superintendent Huggins and Superintendent Gibson are responsible for establishing the policies and procedures to be utilized in the operation

of the Erie County Correctional Facility and the Erie County Holding Center, and are responsible for the implementation of the strip search policy questioned in this lawsuit. As such, Gallivan, Howard, Livingston, Huggins and Gibson are each individually responsible for the damages of the named Plaintiffs and members of the Class.

69. Sheriff Gallivan, Undersheriff Howard, Superintendent Livingston, Deputy Superintendent Huggins, and Superintendent Gibson knew that the ECCF and ECHC's strip search policy was illegal, and acted willfully, knowingly, and with specific intent to deprive Plaintiffs and members of the Class of their Constitutional rights.

70. This conduct on the part of all Defendants represents a violation of 42 U.S.C. § 1983, given that their actions were undertaken under color of state law.

71. As a direct and proximate result of the unconstitutional acts described above, Plaintiffs have been irreparably injured.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

### -- Demand for Declaratory Judgment --

72. Plaintiffs incorporate by reference and reallege each and every allegation stated in paragraphs 1 through 71.

73. The policy, custom and practice of the Erie County Sheriff's Department, the County of Erie and the Policy Making Defendants is clearly unconstitutional, in that these entities and individuals are directing/conducting the strip searches of all individuals placed into the ECCF and/or the ECHC without any particularized suspicion that the individuals in question have either contraband or weapons.

74. Plaintiffs and members of the Class request that this Court issue a declaratory judgment, and that it declare the strip search policy of the County of Erie and the Erie County Sheriff's Department to be unconstitutional.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

### -- Demand for Preliminary and Permanent Injunction --

75. Plaintiffs incorporate by reference and reallege each and every allegation stated in paragraphs 1 through 74.

76. The policy, custom and practice of the Erie County Sheriff's Department, the County of Erie and the Policy Making Defendants is clearly unconstitutional, in that these entities and individuals are directing/conducting the strip searches of all individuals placed into the ECCF and/or the ECHC without any particularized suspicion that the individuals in question have either contraband or weapons.

77. Upon information and belief, this policy is currently in place at the ECCF and the ECHC, with new and/or prospective members of the Class being subjected to the harms that have already been inflicted upon the named Plaintiffs.

78. The continuing pattern of strip searching individuals charged with minor crimes will cause irreparable harm to the new and/or prospective members of the Class, an adequate remedy for which does not exist at law.

79. Plaintiffs demand that the County of Erie, the Erie County Sheriff's Department, the Policy Making Defendants and Erie County Corrections Officers immediately desist from strip searching individuals placed into the custody of the ECCF and/or the ECHC absent any particularized suspicion that the individuals in question have either contraband or weapons, and seek both a preliminary and permanent injunction from this Court ordering as much.

## DEMAND FOR PUNITIVE DAMAGES

80. The actions of the Individual Defendants detailed herein are outrageous, in that they continue to propagate an illegal strip search policy even though they know for a fact that their actions are unconstitutional.

## DEMAND FOR TRIAL BY JURY

81. The Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Adam Pritchard, Edward Robinson and Julenne Tucker, on behalf of themselves and on behalf of a class of others similarly situated, request that this Honorable Court grant them the following relief:

A.          An order certifying this action as a class action pursuant to Fed. R. Civ. P. 23.

B.          A judgment against all Defendants, jointly and severally on Plaintiffs' First and Fourth Causes of Action detailed herein, awarding Compensatory Damages to each named Plaintiff and each member of the proposed class in an amount to be determined by a Jury and/or the Court on both an individual and a class wide basis.

C.          A judgment against Defendant Patrick Gallivan on Plaintiffs' First Cause of Action for $1,000,000.00 in punitive damages.

D.          A judgment against Defendant Timothy Howard on Plaintiffs' First Cause of Action for $1,000,000.00 in punitive damages.

E.          A judgment against Defendant Donald J. Livingston on Plaintiffs' First Cause of Action for $1,000,000.00 in punitive damages.

F.      A judgment against Defendant Robert Huggins on Plaintiffs' First Cause of Action for $1,000,000.00 in punitive damages.

G.      A judgment against Defendant H. McCarthy Gibson on Plaintiffs' First Cause of Action for $1,000,000.00 in punitive damages.

H.      A declaratory judgment against all Defendants declaring the County of Erie and the Erie County Sheriff's Department's policy, practice and custom of strip and visual cavity searching all detainees entering the ECCF and/or the ECHC, regardless of the crime charged or suspicion of contraband, to be unconstitutional and improper.

I.      A preliminary and permanent injunction enjoining Defendants from continuing to strip and visual cavity search individuals charged with misdemeanors or minor crimes absent particularized, reasonable suspicion that the arrestee subjected to the search is concealing weapons or other contraband.

J.      A monetary award for attorney's fees and the costs of this action, pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 23;

Respectfully submitted by:

Dated:  July 22, 2004
      Albany, NY

Elmer Robert Keach, III, Esquire
Member of the Bar of the
U.S. District Court for the
Western District of New York
One Steuben Place
Albany, NY  12207
Telephone:         518.434.1718
Telecopier:        877.471.3092
Electronic Mail:  bobkeach@keachlaw.com

Bruce E. Menken, Esquire
Jason J. Rozger, Esquire
BERANBAUM, MENKEN, &
    BEN-ASHER, LLP
Three New York Plaza
New York, NY  10004
Telephone:         212.509.1616
Telecopier:        212.509.8088
Electronic Mail:       jrozger@bmbf.com

Gary E. Mason, Esquire
Charles Schneider, Esquire
THE MASON LAW FIRM, PLLC
1225 19th Street, NW
Suite 600
Washington, DC  20036
Telephone:       202.429.2290
Telecopier:       202.429.2294
Electronic Mail: gmason@masonlawdc.com

Jonathan W. Cuneo, Esquire
Charles LaDuca, Esquire
CUNEO WALDMAN & GILBERT, LLP
317 Massachusetts Avenue, N.E.
Suite 300
Washington, DC  20002
Telephone:          202.789.3960
Telecopier:         202.789.1813
Electronic Mail:  CharlesL@cuneolaw.com


**ATTORNEYS FOR PLAINTIFFS AND
PROPOSED CLASS**