UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ADAM PRITCHARD,
EDWARD ROBINSON and
JULENNE TUCKER,
both individually and on behalf of a class of
others similarly situated,

                     **Hon. Hugh B. Scott**

               Plaintiffs,                 04CV534C

                         **Order**

                 v.

THE COUNTY OF ERIE, et al.,

               Defendants.

Before the Court are defendants' motions to compel (Docket Nos. 16 (County and most Sheriff's officials, hereinafter "County Defendants"), 22 (Gipson[1])), plaintiffs' omnibus motion for various forms of relief (Docket No. 25), and the County Defendants' motion for a protective order against <u>ex parte</u> communication with Erie County Sheriff's deputies by plaintiffs' counsel (Docket No. 40[2]).  This case was referred to the undersigned with full pretrial authority (Docket No. 5).

---

[1]Plaintiffs misidentify defendant Gipson as "Gibson."  <u>Cf.</u> Docket No. 33, Pls. Atty. Affirm. ¶ 2.

[2]This motion substitutes for an earlier motion, Docket No. 38, that defendants attempted to file.  That earlier motion was garbled in transmission and was terminated from the motion list.

## BACKGROUND

Defendants here are Erie County, its former Sheriff Patrick Gallivan, present Sheriff Timothy Howard, and various Sheriff's Department officials responsible for the Erie County Holding Center and Erie County Correctional Facility.  Note, currently no Sheriff's deputy or lower ranked officer is a party in this action.  Plaintiffs currently are three persons formerly incarcerated in either facility for non-felony violation, misdemeanor or traffic infractions.  They allege that they were strip searched while in County custody in 2003-04 (Docket No. 1, Compl. ¶¶ 3-5).  Plaintiffs allege a class consisting of others who were similarly strip searched, from July 22, 2001, while entering either the Holding Center or the Correctional Facility regardless of the offense charged against them (see Docket No. 1, Compl. at 1-2, ¶ 15), although the named plaintiffs allege being searched later.  By stipulation, the motion for class certification has been adjourned to October 21, 2005 (see Docket No. 28; see also Docket No. 13, Scheduling Order (setting motion to certify class deadline to Aug. 28, 2005)).[3]

Defendants answered (Docket No. 3, Gallivan, Howard, Huggins, Livingston, Erie County; Docket No. 4, Gipson), alleging cross-claims against each other.  On June 23, 2005, these defendants entered into a stipulation to dismiss these cross-claims (Docket No. 15).

Plaintiffs announce in these motion papers that claims by plaintiff Julenne Tucker as a class representative (Docket No. 25, Pls. Atty. Affirm. ¶ 10 n.1) and generally (see Docket No. 33, Pls. Atty. Aff. ¶ 10) may be dismissed upon counsel contacting Tucker.

---

[3]The Scheduling Order in this case closed discovery on class certification on August 23, 2005; closes fact and expert discovery by April 6, 2006, and scheduled dispositive motions by August 15, 2006, Docket No. 13, Feb. 23, 2005.

*Defendants' Motions to Compel*

The County Defendants seek an Order compelling plaintiffs to respond to their discovery

demands, seeking as a sanction preclusion of evidence at trial (Docket No. 16).  They objected to

the initial disclosures made by plaintiffs, contending that they failed to fully identify witnesses

(id., County Defs. Atty Aff. ¶¶ 5-19, Exs. B, C), provide witness statements (id. ¶ 20), or a

computation of their damages (id. ¶¶ 21-23).  They also seek plaintiffs document production (id.

¶¶ 28-29, Exs. D, E), in particular documents related to the allegations in the Complaint;

statements by County employees past or present; documents regarding the arrests of plaintiffs

Robinson and Tucker (id. ¶ 39, Ex. D, document requests 1, 2, 13, 14).  They further seek

answers to their Interrogatories (id. ¶¶ 40-41, Ex. F, E), in particular queries about plaintiffs

Robinson and Tucker (id. ¶¶ 44, 45).   These defendants outlined their conferences with plaintiffs

in an attempt to obtain this material (id. ¶¶ 53-55).

Defendant Gipson also moves for an Order to compel plaintiffs, seeking to preclude

admission of evidence for plaintiffs' failure to produce (Docket No. 22).  Gipson claims that

plaintiffs failed to produce any documents to him or answer his Interrogatories (Docket No. 23,

Gipson Atty. Aff. ¶¶ 6, 11).

*Plaintiffs' Omnibus Motion*

Pursuant to the status conference held on August 3, 2005 (Docket No. 21), the Court gave

the parties until August 10, 2005, to file any additional motions on subjects discussed during that

conference.  Plaintiffs then moved for several forms of relief (to compel production of booking

sheets and answers to interrogatories regarding the dismissal of cross-claims against defendant

Gipson, to obtain a protective order against speaking objections during depositions, to grant them

leave to intervene two additional parties as plaintiff-representatives (Docket No. 25)).  But

plaintiffs filed this motion a day after the deadline set by this Court's direction (see Docket No.

21) and also without filing any proof of service.  This is striking since (as noted during the

August 3, 2005, conference, cf. Docket No. 21) plaintiffs objected to defendants sending

correspondence to the Court without copying all of plaintiffs' counsel. Plaintiffs, thus, needed to

file proof of service of this motion.  Upon instruction from chambers, plaintiffs did file

certificates of service for the motion papers filed (Docket Nos. 36, 37)[4].  In order to not delay this

action further, this motion was governed by the briefing schedule described below for the defense

motions.

*County Defendants' Motion for Protective Order*

At the August 3, 2005, conference, defense counsel for the County Defendants raised

their objection to plaintiffs' counsel contacting certain County Sheriff's department employees

outside of defense counsel's presence (see Docket No. 21).  Plaintiffs then replied that they only

spoke to Sheriff's department employees to serve them with subpoenas.  The County Defendants

---

[4]Federal Rule of Civil Procedure 5(d) requires that a certificate of service be filed with a
copy of the served paper.  See 4B Charles A. Wright & Arthur R. Miller, Federal Practice and
Procedure § 1150, at 458 (Civil 3d ed. 2002).  The Court may deny a motion because no
certificate of service was attached to it.  See Evans v. Port Auth. of N.Y. and N.J., 246 F. Supp.
2d 343, 344 (S.D.N.Y. 2003); Marbly v. Home Properties of N.Y., 183 F. Supp. 2d 950, 954
(E.D. Mich. 2002).  Even with the Court's Electronic Case Filing system parties are still required
to file proof of service.  See W.D.N.Y. Admin. Procedures Guide ¶ 2(f)(ii), at 6 (June 2004).
Plaintiffs' counsel assumed that this District's rule was similar to his understanding of the
Northern District of New York's rule that the Electronic Case Filing notice of filing also served
as proof of service without requiring filing a separate document, but cf. N.D.N.Y. Gen. Order 22,
Admin. Procedures for Electronic Case Filing 5.3 (Dec. 3, 2004) (court still requires certificate of
service).
        Nevertheless, defendants have responded to plaintiffs' motion (Docket Nos. 31, 33)
without raising an objection to the lack of proof of service.  The Court will consider plaintiffs'
omnibus motion and their response to defendants' motions.

apparently dropped the matter (Docket No. 41, County Defs. Atty. Affirm. ¶ 10). But plaintiffs renewed their intention to question as witnesses Sheriff's department employees, contending that they are not represented by defense counsel (id. Ex. B), and the County Defendants renewed their objection (id. ¶¶ 11, 12, Ex. D). Despite this Court's Order (Docket No. 28; see Docket No. 44) calling for motions on issues raised on August 3, 2005, to be filed by August 10, 2005, the parties stipulated to the County Defendants making their motion for a protective order by August 22, 2005 (Docket No. 41, County Defs. Atty. Affirm. ¶¶ 12-13). The County Defendants' last motion (Docket No. 40) obviously was beyond the August 10, 2005, motion deadline, but that motion alleged actions by plaintiffs after that deadline that require the Court to consider this otherwise late motion (see Docket No. 44).

*Briefing Schedules*

In order to expedite this matter, the parties entered into stipulations to a filing and briefing schedule for these motions (letter of James Domagalski to chambers, Aug. 9, 2005). Pursuant to the parties' stipulated schedule, responses to all motions then pending were due on or before August 17, 2005, and any reply was due on or before September 1, 2005. As for the County Defendants' motion for a protective order, responses were due by September 1, 2005, and any reply was due by September 16, 2005 (Docket No. 44). Oral argument for all motions was held on September 20, 2005, and the motions then were deemed submitted and the Court reserved decision. (Docket Nos. 28, 34, 44, 51.)

## DISCUSSION

The tenor of the moving papers in this action (e.g., Docket No. 47, Pls. Reply Affirm. ¶ 2), argument of these motions, and prior submissions to and appearances in this Court, indicate

5

a rancor and vitriol that is contrary to the spirit of the discovery and pretrial rules in this Court.

Counsel have accused each other of stonewalling (Docket No. 29, County Defs. Memo. at 1;

Docket No. 45, County Defs. Reply Affirm. ¶ 3), making frivolous or unsubstantiated discovery

requests or claims (e.g., Docket No. 30, County Defs. Affirm. ¶¶ 4-6; cf. Docket No. 47, ¶ 2).

One part of plaintiffs' omnibus motion (Docket No. 25, Pls. Motion Affirm. ¶ 19) and

defendants' response to that motion (Docket No. 30, County Defs. Affirm. ¶¶ 67-73) address

how depositions were conducted, alleging conduct that may violate Rule 30.  This atmosphere of

litigation has resulted in multiple motions and acrimony where it is not required.  If necessary,

the Court may take a more hands-on approach to managing discovery in this action.  As parties

are aware, such an approach is time consuming and potentially expensive for all concerned.  It is

hoped that future conduct of this case will not warrant such extreme judicial intervention in

processes that are designed to run without such participation.

I.      Motions to Compel

        A.      Standard

        Discovery under the Federal Rules is intended to reveal relevant documents and

testimony, but this process is supposed to occur with a minimum of judicial intervention.  See

8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure

§ 2288, at 655-65 (Civil 2d 1994).  "Parties may obtain discovery regarding any matter, not

privileged, that is relevant to the claim or defense of any party, including the existence,

description, nature, custody, condition, and location of any books, documents, or other tangible

things and the identity and location of persons having knowledge of any discoverable matter."

Fed. R. Civ. P. 26(b)(1).  Initial disclosure includes producing "a copy of, or a description by

category and location of, all documents . . . that are in the possession, custody, or control of the

party and that the disclosing party may use to support its claims . . . ." Fed. R. Civ.

P. 26(a)(1)(B).  Evasive or incomplete disclosure is to be treated like a failure to disclose.  Fed.

R. Civ. P. 37(a)(3).

All defendants move to compel and for other relief under Rule 37(a)(2)(A) (failure to

produce initial disclosure), (B) (failure to respond to document demands or interrogatories), or

(c)(1) (failure to disclose initial disclosure precludes use of material not disclosed as evidence),

(2) (failure to respond to admit to genuineness of document), although Gipson does not complain

about plaintiffs' initial disclosure.  (Docket No. 16, County Defs.' Notice of Motion at 1; Docket

No. 22, Gipson's Notice of Motion at 1.)  Failure to produce and compelling the opponent to

seek an order compelling discovery exposes the party (and/or its attorney) to sanctions.  See

generally id. R. 37.  Even if the party produces discovery in the face of a motion to compel, that

party remains subject to Rule 37 sanctions, see id. R. 37(a)(4)(A).

B.      Application

First, none of the moving defendants complain that plaintiffs failed to admit to the

genuineness of a document or to any fact, hence relief under Rule 37(c)(2) is not applicable here.

1.      County Defendants

a.      Initial Disclosure

The County Defendants seek initial disclosure identifying the potential class members

and witnesses as well as discovery demands and interrogatories to flesh out the arrest histories of

plaintiffs Robinson and Tucker.  During oral argument, they asserted that plaintiffs did not reveal

information about two witnesses who eventually were deposed and were the apparent source of

plaintiffs' contention of a <u>de facto</u> strip search policy.  As for the initial disclosure, plaintiffs object to providing the names and addresses of individuals they interviewed since they now declare that the do not intend to call them as witnesses and that production of the list would be revealing attorney work product (Docket No. 33, Pls. Memo. at 1).  The County Defendants reply that they seek only the witnesses to the alleged strip searches, not those plaintiffs' counsel interviewed (Docket No. 45, County Defs. Reply Affirm. ¶ 21), also arguing that even if they sought counsel's interview notes they would not constitute attorney work product (<u>id.</u> ¶ 27).

Plaintiffs probably undertook this effort to identify possible class members as well as potential witnesses to strip searches.  Rule 26(a)(1)(A) calls for disclosure of names and (if known) addresses and telephone numbers of "each individual likely to have discoverable information that the disclosing party may use to support its claim . . . identifying the subjects of information."  Fed. R. Civ. P. 26(a)(1)(A); <u>see</u> Fed. R. Civ. P. 26 2000 Adv. Comm. Notes (2000) (hereinafter "2000 Advisory Notes").  If plaintiffs intend to stay with their position, they may be precluded at a latter time from using any undisclosed persons, even at a pretrial stage. <u>See</u> 2000 Advisory Notes at 731.  Under Rule 26(a), parties are to disclose known witnesses.

Therefore, plaintiffs are to produce initial disclosure as known to plaintiffs to date.  <u>See</u> <u>also</u> Fed. R. Civ. P. 26(e) (duty to supplement).  Namely, plaintiffs are to disclose individuals likely to have discoverable information that they intend to use during the course of this action (including potential parties and witnesses as well as other uses), with the caveat that plaintiffs will not be allowed to use known but undisclosed persons.  This eliminates plaintiffs' expressed concern about revealing attorney work product because plaintiffs identify only those persons they intend to use during the course of this litigation and this need not be all of the people contacted

by plaintiffs' counsel.  Plaintiffs thus would have to make a judgment now as to whom they intend to use.  This disclosure is especially pertinent to identifying the potential scope of the class alleged, its numerosity, commonality of facts and claims, and other characteristics leading to the determination of the existence of a class here.  Therefore, the County Defendants' motion is **granted**.

b.      Discovery Demands and Interrogatories

As for the County Defendants' discovery demands, plaintiffs respond that, where documents exist, they will supplement their responses within one week of their moving papers (Docket No. 33, Pls. Atty. Affirm. ¶¶ 3-10).  As for Interrogatory 1, plaintiffs complain that it requires them to identify the class members who number in the thousands and is an example of oppression by interrogatory and grossly overbroad (id. ¶ 8).  Plaintiffs also consider Interrogatory 8 overbroad because it calls for describing the searches of thousands of persons (id.).

The County Defendants respond, in particular, that plaintiffs have not produced materials plaintiff Robinson stated in his deposition that he would attempt to locate (Docket No. 45, County Defs. Reply Affirm. ¶¶ 29-33) and no materials were produced for plaintiff Tucker (id. ¶¶ 37-38).  If plaintiffs intended to withdraw claims by Tucker, they either should do so promptly or produce his materials (id.).

Given plaintiffs' promise to produce or supplement, the County Defendants' motion is **granted in part, modified in part, and otherwise deemed moot** where plaintiffs have pledged to produce.  Plaintiffs are to answer Interrogatory 8 regarding facts of the alleged strip searches, and may do so generally (such as describing a typical search as well as atypical examples, as well

as the purported searches conducted upon the named plaintiffs).  If plaintiffs fail to produce, or if their production is unsatisfactory, the County Defendants may renew their motion.  **As for plaintiff Tucker, plaintiff should either produce materials sought as to him or formally withdraw his claim within thirty (30) days of entry of this Order.**

        2.      Defendant Gipson

Separately, defendant Gipson contends that plaintiffs have not produced any documents he requested and have not answered his interrogatories (Docket No. 23).  Plaintiffs respond that they will provide responses to Gipson's demands within one week of that response (Docket No. 33, Pls. Atty. Affirm. ¶ 2), stating in oral argument on September 20, 2005, that responsive production was completed.  The motion to compel is thus **moot**.  Again, if plaintiffs fail to produce as promised (or their production is somehow incomplete or unsatisfactory), Gipson may renew his motion.

        3.      Sanctions

        a.      Motion Expenses Sanction

"The administration of the rules lies necessarily within the province of the trial court with power to fashion such orders as may be deemed proper to vouchsafe full discovery for the just, speedy and inexpensive determination of the lawsuit."  <u>Robison v. Transamerica Ins. Co.</u>, 368 F.2d 37, 39 (10th Cir. 1966) (Murrah, J.); <u>see</u> 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, <u>Federal Practice and Procedure</u> § 2284, at 614 & n.6 (Civil 2d ed. 1994).

Rule 37 requires the movant to certify that it conferred (or attempted to confer) with the recalcitrant party in good faith to secure discovery.  Fed. R. Civ. P. 37(a)(2)(B); <u>see</u> W.D.N.Y. Local Civ. R. 37.  The County Defendants allege good faith attempts to try to resolve their

disclosure and discovery issues with plaintiffs' counsel prior to this motion (Docket No. 17,

County Defs. Atty. Aff. ¶¶ 53-56) which plaintiffs do not dispute.  Gipson makes general

allegations at his attempts to confer with plaintiffs' counsel to obtain the discovery sought

(Docket No. 23, Gipson Atty. Aff. ¶¶ 19-20).  He does not provide specific instances of contact

with plaintiffs' counsel.  A single letter from counsel, for example, has been found to not

sufficiently satisfy the duty to confer under Rule 37.  <u>Williams v. Board of County Comm'rs of</u>

<u>Unified Gov't of Wyandotte County & Kansas City, Kan.</u>, 192 F.R.D. 698, 699-700 (D. Kan.

2000); <u>see</u> <u>Pulsecard, Inc. v. Discover Card Servs.</u>, 168 F.R.D. 295, 302 (D. Kan. 1996); <u>Time</u>

<u>Inc. v. Simpson</u>, No. 02 Civ. 4917, 2002 WL 31844914, at *2 (S.D.N.Y. Dec. 18, 2002) (denying

costs where movant failed to meet and confer).  In <u>Time Inc.</u>, the court noted that the failure to

meet and confer forgoes the opportunity for the parties to narrow the issues before seeking court

intervention, although the court considered the merits of plaintiff's motion to compel.  2002 WL

31844914, at *2.

Plaintiffs argue that Gipson did nothing to secure his entitlement to production and that

what would be produced is duplicative of materials produced to the County Defendant (Docket

No. 33, Pls. Atty. Affirm. ¶ 2).  But under Rule 37 even if the party produces discovery in the

face of a motion to compel, that party remains subject to Rule 37 sanctions, <u>see</u> Fed. R. Civ.

P. 37(a)(4)(A).  If a motion to compel is granted or if a party (like plaintiffs here) provides

disclosure after a motion to compel is filed, the court "shall" require the opposing party (and/or

counsel advising that party) to pay to the moving party their reasonable motion expenses, unless

the Court finds that the refusal to produce was substantially justified or other circumstances

makes an award of expenses unjust.  Fed. R. Civ. P. 37(a)(4)(A).

The County Defendants sufficiently showed good faith efforts to resolve short of motion practice to warrant sanction for their motion and their motion for sanctions (Docket No. 16) is **granted**. Gipson in his motion (Docket No. 22), however, has not sufficiently alleged such good faith efforts, merely making his motion as the other defendants did without making the effort to first request production. As a result, Gipson will be **denied** recovery of his motion costs as a sanction. As detailed in the Conclusion of this Order, the County Defendants are to file an affidavit of their reasonable costs associated with their motion (Docket No. 16) within five (5) business days (see also Fed. R. Civ. P. 6(a) (calculation of time for less than ten day period)); plaintiffs may file a responding affidavit within five (5) business days of service of that applying affidavit. No reply papers will be accepted on the fee applications. The Court will deem the motion submitted as of the time for plaintiffs' responding paper.

       b.     Preclusion

The County Defendants alternatively move for evidence preclusion under Rule 37(c)(1) and (2) for plaintiffs' failure to make mandatory disclosures (Docket No. 16). The dismissal of a claim, defense or preclusion of evidence for failure to respond to a discovery request is a drastic remedy. Burnett v. Venturi, 903 F. Supp. 304, 309 (N.D.N.Y. 1995); see National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 643 (1976) (per curiam) (hereinafter "NHL") (dismissal as severest sanction). Rule 37(c)(1) provides that if a party refuses to disclose information required by Rule 26(a) (unless such refusal is harmless) is not permitted to use as evidence at trial, at a hearing, or on a motion, any witness or information not disclosed. "In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions," id., including paying reasonable motion

expenses caused by the failure, sanctions authorized by Rule 37(b)(2)(A) (facts established), (B) (refusing to allow disobedient party to support claim or defense), or (C) (striking pleadings), or informing the jury of the failure to disclose.  Fed. R. Civ. P. 37(c)(1).  Subsection (2) does not apply here, since it involves a party refusing to admit to the genuineness of a document or to the truth of a requested admission under Rule 36.  Such preclusion ultimately may be dispositive and beyond the authority of the undersigned to order (as opposed to recommending in a Report & Recommendation, see 28 U.S.C. § 636(b)(1)(A), (B).

Gipson also seeks preclusion under Rule 37(c)(1) and (2).  (Docket No. 22; Docket No. 23, Def. Atty. Aff. ¶ 2.)  He seeks preclusion for plaintiffs' failure to produce documents (Docket No. 23, Def. Atty. Aff. ¶ 9) or answer his Interrogatories (id. ¶ 16).  At oral argument, Gipson joined the County Defendants in their motion regarding Rule 26 disclosure, although their motion papers only mentioned document production and interrogatories and do not state whether plaintiffs produced initial disclosure to Gipson, or not, or Gipson's efforts to request such disclosure.

Rule 37(c) does not apply to the latter forms of discovery; as just stated it is limited to failures to make initial disclosures or admissions under Rule 36 or admit to the genuineness of a document.  Rule 37(b), which authorizes evidence or issue preclusion, see Fed. R. Civ. P. 37(b)(A), (B), (C), applies to a party's disobedience with a Court Order to compel production of some sort.  Absent such an Order, a movant is not entitled to Rule 37(b) sanctions.  See 8A Federal Practice and Procedure, supra, § 2289, at 669; United States v. Kattar, 191 F.R.D. 33, 35 (D.N.H. 1999) (quoting R.W. Int'l Corp. v. Welch Foods, Inc., 937 F.2d 11, 15, 16 (1st Cir. 1991)).  Sanctions (such as recovery of motion costs) are available under Rule 37(a)(4) only if a

party prevails at least in part, <u>see</u> Fed. R. Civ. P. 37(a)(4)(A), (C), or gains discovery in the face of the motion.

Gipson essentially seeks a sanction for failing to obey an Order to compel, Fed. R. Civ. P. 37(b)(2)(A)-(C), <u>without</u> an Order being entered.  The relief available when a party fails to respond to a discovery demand is an Order to compel and sanctions of the reasonable costs associated with the motion to compel, Fed. R. Civ. P. 37(a)(2)(B), (4)(A).  The enhanced sanction of Rule 37(b) arises because the party disregards both the discovery demand <u>and</u> the Court's subsequent Order compelling production.  <u>See also</u> Fed. R. Civ. P. 37(b)(2)(D) (in lieu of foregoing order, party could be held in contempt of court for failing to obey discovery order). Gipson's request for relief could be construed as anticipating the breach of an Order to compel, but at this stage such anticipatory relief is not available.

But even if such an Order existed, rather than the extreme sanction of evidence preclusion, <u>see</u> <u>NHL</u>, <u>supra</u>, 427 U.S. at 643, the appropriate sanction here is awarding the successful movants the limited costs for this motion.  <u>See</u>, <u>e.g.</u>, <u>Fisher v. Harris, Upham & Co.,</u> <u>Inc.</u>, 61 F.R.D. 447, 451 (S.D.N.Y. 1973) (reduced monetary sanction imposed rather than striking answer and imposing three times greater monetary sanction), <u>dismissed</u>, 516 F.2d 896 (2d Cir. 1975).  As for all defendants, evidentiary preclusion for plaintiffs' failure to disclose mandatory disclosure at this stage is an extreme sanction.  While plaintiffs' counsel may have been aware of the two witnesses defense counsel cited in oral argument, the other witnesses were unknown to plaintiffs (in fact, the County Defendants were in a better position to identify these potential witnesses, either present or former Sheriff's Department employees, or arrestees processed at the Holding and Correctional Centers).  The better sanction, rather than preclusion,

is awarding of costs relative to plaintiffs' failure to make Rule 26(a) disclosure and that portion of defendants' motion seeking relief for this omission.  For failure to disclose, defendants shall submit affidavits as to their reasonable motion expenses relative <u>only</u> to plaintiffs' failure (and not other aspects of their motions, which were dealt with above).

II.     Plaintiffs' Omnibus Motion

Plaintiffs filed this omnibus motion seeking five forms of relief.  First, plaintiffs seek production of the booking sheets in order to identify possible class members and witnesses to strip searches.  Second, they seek answers to their interrogatories regarding the stipulated dismissal of the cross-claim against defendant Gipson, contending that Gipson had admitted liability prior to the stipulated dismissal.  Third, plaintiffs want an order directing defendants not to make speaking objections during depositions.  Fourth, they seek leave to amend the Complaint to allege two additional plaintiff-representatives, Travis McNamara and Douglas Stanley, although the last day to amend pleadings or add parties was June 1, 2005 (<u>see</u> Scheduling Order, Docket No. 13).  Finally, fifth, plaintiffs seek enlargement of time beyond the stipulated extension of October 21, 2005, to give them 90 days from when defendants produce the booking sheets in order to make the class certification motion.  Defendants also note that plaintiffs seek <u>in camera</u> inspection of documents noted in their privilege log; defendants argue that plaintiffs are not entitled to <u>in camera</u> inspection of those documents (Docket No. 30, County Defs.' Atty. Affirm. ¶¶ 57-66, Ex. D; <u>cf.</u> Docket No. 25, Pls. Atty. Aff. ¶ 16, Exs. M, N).

Gipson only objects to the extension of the deadline for filing a motion to certify the plaintiff class beyond the stipulated date of October 21, 2005 (Docket No. 31, Gipson Atty. Aff. ¶¶ 2-10), while the County Defendants object to other remedies plaintiffs seek.

A.      Plaintiffs' Discovery Motions

1.      Compelling Production of Booking Sheets

Plaintiffs want production of booking sheets at the Erie County Holding Center from July

22, 2001, to the present, to identify potential class members or witnesses to instances of strip

searches.  They tied this production request to their ability to make an initial disclosure of

witnesses (Docket No. 33, Pls. Memo. at 2).  An example of the booking sheets is plaintiff

Edward Robinson (Docket No. 25, Pls. Atty. Affirm. ¶ 13, Ex. L).  They note that the United

States District Court for the Northen District of New York has ordered production of these sheets

in numerous cases.  Bruce v. County of Rensselaer, No. 02CV847, Order, Feb. 3, 2003 (Homer,

Mag. J.) (see Docket No. 25, Ex. G, hereinafter "Bruce"); Marriott v. County of Montgomery,

No. 03CV531, Tr. Dec. 18, 2003, at 36-37 (Peebles, Mag. J.) (see Docket No. 25, Ex. H,

hereinafter "Marriott"); McDaniels v. County of Schenectady, No. 04CV757, Order, Jan. 10,

2005, at 3-5 (Treece, Mag. J.) (see Docket No. 25, Ex. J), Protective Order, Jan. 11, 2005, at 2-6

(Treece, Mag. J.) (see Docket No. 25, Ex. K, hereinafter collectively "McDaniels"); see also id.

Ex. I (argument of McDaniels motion)).

The County Defendants object to this production because of their relevance (or relevance

of portions of information on the sheets) and the privacy rights of the subset of those listed on

these sheets who were not convicted.  Under New York Criminal Procedure Law § 160.50 arrest

records (such as booking sheets) of those not convicted of an offense are to be sealed.  The

County Defendants contend that the United States District Court for the Northern District of New

York did not consider the privacy concerns these defendants are now raising before this Court.

They argued in oral argument that plaintiffs had other means to seek this information and, after a

16

year's investigation prior to filing this action and a year's worth of discovery, did not investigate

short of this drastic measure.  Under defendants' view, if produced at all, the booking sheets

should be redacted to reveal information about those convicted of misdemeanors or violations,

and not reveal information about those convicted of felonies (as irrelevant to plaintiffs' claims)

or all those found not guilty of any offense.  Note, defendants have not discussed the burden

imposed by producing these records.  Plaintiffs seek information not to stigmatize arrestees

identified in the booking sheets, especially those arrestees who were ultimately not convicted (cf.

Docket No. 30, County Defs. Atty. Affirm. ¶ 17; Docket No. 25, Ex. H, Marriott Tr. at 14

(plaintiffs' counsel arguing that they do not intend to violate arrestees' privacy rights in seeking

this production)) but to identify potential witnesses to strip searches and potential claimants.

But the Northern District of New York did consider privacy concerns under

CPL § 160.50, among other privacy issues raised about the interests of the arrestees discussed in

these records.  (See, e.g., Docket No. 25, Ex. I, McDaniels Tr. at 46-48, Ex. H, Marriott, Tr. at

19-23 (defense arguing for prior notice to arrestees before releasing records)).  But even if that

court did not consider the impact on CPL § 160.50 to the extent that the County Defendants now

desire, this Court has considered that provision in the arguments raised herein.  This Court has

weighed the centrality of the information contained in these booking sheets to plaintiffs

identifying potential witnesses and class members with the privacy interests identified by

defendants under CPL § 160.50 and concludes that, with redaction as to be described, plaintiffs

should receive access to these records.

Therefore, defendants are to produce redacted version of the booking sheets, either

redacted sheets or a summary chart containing information from the sheets.  The redactions

should exclude information (1) of those convicted of felonies; (2) for those whose charges were adjudicated but were not convicted.  Defendants do not object to redaction of these booking records being onerous  or burdensome.  Plaintiffs' motion for production of these booking sheets is **granted in part** as follows:  information from these sheets shall be redacted or produced in summary form identifying the name, address, telephone number, date of birth, arresting charge, and date of arrest, see Marriott, supra, Docket No. 25, Ex. H, at 36, for those arrestees who were arrested from July 2001 to present, but excluding those arrested who (a) were ultimately not convicted or (b) were convicted of felony offenses (see Docket No. 29, County Defs. Memo. at 11).  The Court will enter a Protective Order regarding dissemination of information from these booking sheets to retain confidentiality, see Marriott, supra, Docket No. 25, Ex. H, Tr. at 36-37; McDaniels, supra, Docket No. 25, Ex. K.  The Court declines the County Defendants' suggestion to have plaintiffs notify individuals listed in the produced redacted booking sheets (cf. Docket No. 29, County Defs. Memo. at 11).

2.      Interrogatories Regarding Dismissed Gipson Cross-Claims

The County Defendants initially alleged a cross-claim against Gipson that

> "upon information and belief, any injuries or damages sustained by the plaintiffs
> as alleged in the Complaint, if not caused by reason of the negligence,
> carelessness or other culpable conduct of the plaintiff, were caused or contributed
> to by the negligence, carelessness or other culpable conduct of the defendant,
> GIPSON.  Upon information and belief, some of that conduct may have occurred
> outside the scope of GIPSON's employment."

(Docket No. 3, County Defs. Ans. ¶ 32; see Docket No. 25, Pls. Atty. Aff. ¶¶ 5, 7, Ex. C).

Defendant Gipson in his Answer asserted a parallel cross-claim against the County Defendants (Docket No. 4, Gipson Ans. ¶¶ 48-49).  The defendants then entered into a stipulation dismissing

18

their respective cross claims (Docket No. 15).  Plaintiffs now want discovery about the factual

basis for the cross-claim against Gipson.  They claim that Gipson sent a memorandum to his

subordinates which they allege admits to the existence of a blanket strip search policy prior to

September 2003 (Docket No. 25, Pls. Atty. Affirm. ¶ 5; Ex. D) and that Gipson's deposition

testimony made further admissions (id. Affirm. ¶ 5).  Plaintiffs, however, did not include

portions of Gipson's transcript to show these admissions or paraphrase those admissions in their

voluminous motion papers.  The memorandum in question, dated August 27, 2003, stated that

"routine or universal strip searches of newly admitted inmates" was found to be unconstitutional

and effective immediately "no routine or universal strip searches are to be administered to any

newly admitted inmate."  The memorandum then outlines the circumstances when such strip

searches could occur.  (Id. Ex. D.)

The County Defendants[5] argue that the cross-claim was filed upon information and belief

without any prior factual determination of the accuracy of plaintiffs' underlying claim (Docket

No. 30, County Defs. Atty. Affirm. ¶ 48).  They explain the August 27, 2003, memorandum as

part of "a continuing effort to advise Sheriff's Department employees of their responsibilities

with respect to strip searches and the fact that blanket strip searches could not be conducted."

(Id. ¶ 53.)  They denied the existence of blanket strip searches (id. ¶ 54).[6]

---

[5]Interestingly, defendant Gipson does not comment about this portion of plaintiffs' motion, cf. Docket No. 31, Def. Atty. Affirm., although during oral argument he joined in the arguments of the County Defendants.

[6]The counsel for the County Defendants make various disparaging remarks about plaintiffs' contentions in this portion of his affirmation, Docket No. 30, ¶¶ 52 ("far-fetched allegations," "unsubstantiated hyperbole generated regularly by the plaintiffs"), 54 (plaintiffs' "unilaterally spin a single memo out of context" as "typical" of their approach).  As noted at the outset of the Discussion in this Order, such advocate hyperbole needs to cease.

The cross-claim seems to be the standard allegation among multiple defendants, preserving the right of the alleging defendants against a codefendant in the event plaintiff prevails against any of them to ensure indemnification or, in this instance, to allow the municipal defendant to disclaim indemnification of one of its officials if it is later determined that the individual defendant caused the injuries (see id. ¶ 49).  Therefore, plaintiffs' motion to compel answer to their interrogatories on this issue is **denied**.

3.      Speaking Objections and Conduct of Depositions

Plaintiffs moved for a protective order regarding the manner of the conduct of depositions (Docket No. 25, Pls. Atty. Affirm. ¶ 19).  Defendants contend that they will adhere to the Rules already in place regarding speaking objections (Docket No. 29, County Defs. Memo. at 14-15), noting that plaintiffs' counsel disrupted depositions (id. at 15-16; Docket No. 30, County Defs. Atty. Affirm. ¶¶ 67-69, Ex. E), but did not formally move for an order to sanction such conduct.

Federal Rule of Civil Procedure 30(d)(1) states that objections during an examination are to be "stated concisely and in a non-argumentative and non-suggestive manner."  Fed. R. Civ. P. 30(d)(1).  Cf. Hall v. Clifton Precision, 150 F.R.D. 525 (E.D. Pa. 1993).  Rule 30(d)(3) provides that "if the court finds any impediment, delay, or other conduct has frustrated the fair examination of the deponent, it may impose upon the person responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof."

Defendants request (but have not formally cross-moved) that all counsel be admonished to follow the Rules (Docket No. 29, County Defs. Memo at 16).  The Court agrees; all counsel are reminded and admonished to follow those rules and not make suggestive objections, speaking objections or other actions that would frustrate the conduct and completion of depositions, see

20

Fed. R. Civ. P. 30(d)(1), (d)(3); <u>cf.</u> 28 U.S.C. § 1927; <u>compare</u> <u>DirecTV v. Rowland</u>, Case

No. 04CV297, Docket No. 45 (W.D.N.Y. May 27, 2005) (Scott, Mag. J.) (sanctioning defense

counsel for conduct during client's deposition).  As a result, plaintiffs' motion is **denied in part**,

since a protective order (and its award of expenses under Rules 26(b) and 37(a)(4)) will not be

issued, and **granted in part**, that all parties are reminded of their continuing obligations under

the Federal Rules.  As stated in the introduction to the discussion of this Order, if necessary, the

Court will engage in more aggressive supervision of discovery in this case, including monitoring

of depositions.

As of now, neither party will be awarded sanctions for this portion of the motion.  If

parties deviate from this particular rule, the Court may entertain a motion for sanctions or, as

indicated previously, take a more active supervision of the completion of discovery in this case.

But, given the tenor of this litigation to date, the Court is not issuing an invitation for the parties

to find reasons or create cause for further ancillary motion practice over sanctions and potentially

sanctionable conduct.

4.    <u>In Camera</u> Inspection of Privilege Log Items

Plaintiffs also seek Court review of documents identified in defendants' privilege log to

make sure that they are appropriately designated as attorney-client documents (Docket No. 25,

Pls. Atty. Aff. Exs. M, N; Docket No. 30, County Defs. Atty. Affirm. Ex. D).  Defendants object

to <u>in camera</u> inspection of items listed in their privilege log (Docket No. 30, County Defs. Atty.

Affirm.).  The amended log itself (Docket No. 25, Ex. N, Docket No. 30, Ex. D) identifies

documents either seeking legal advice by defendants or communication from attorneys to

defendants (setting up meetings or rendering legal opinions and analysis).

21

At argument, the County Defendants offered to submit an in camera affidavit apparently outlining the contents of the privilege log documents to justify the privilege asserted.  During argument, the Court questioned the role of the County Attorney's office in this matter, noting its dual role as legal advisor and advocate in the pending action and its role as policy advisor.  The Court raised concerns that the log did not sufficiently identify attorney-client communication or particularize the contents of the claimed items, especially communications between the County Attorney's office and the Sheriff's Department prior to commencement of this action, given the dual role of advocate/advisor and policy advisor the County Attorney has.  Therefore, plaintiffs' motion for in camera inspection is **granted**.  The Court will review the privileged log documents and determine if the asserted privilege appropriately applies to each of the documents.

       5.       Sanctions under Rule 37

The prevailing party in a motion to compel is entitled to its reasonable expenses.  Fed. R. Civ. P. 37(a)(4).  Here, plaintiffs prevail in obtaining redacted version of the information from defendants' booking sheets and in camera inspection of the privilege log documents, but do not prevail in their motion for answers to their interrogatory regarding the dropped cross-claim against Gipson.  Accordingly, plaintiffs are entitled to recover some of their reasonable motion expenses as to that portion of the motion to compel in which they prevailed.  Similarly, defendants in successfully resisting parts of the omnibus motion to compel are entitled to their reasonable motion expenses.  Determining these amounts, however, should not start a cottage industry of ancillary litigation.

Here, plaintiffs sought six forms of relief, but only four of which are governed by Rule 37 and are subject to discovery sanctions.  Since plaintiffs prevailed at two of the four forms of

relief sought where discovery sanctions are available (the release of redacted information from the booking sheets and in camera inspection), plaintiffs counsel should reduce any reasonable motion costs either to one-third (two-sixths) of the omnibus motion's costs or to the actual costs for the prevailing portion of the motion.  Similarly, the County Defendants[7] prevailed on two of the four discovery sub-motions (of the six total motions for various forms of relief), their reasonable motion costs should be calculated either one-third of the costs to respond to the omnibus motion or the actual costs for arguing the prevailing objections to that omnibus motion.

At the schedule set forth below, the prevailing parties should submit their respective reasonable costs associated with the portions of plaintiffs' motion in which they prevailed.

B.      Other Relief Sought by Plaintiffs

1.      Motion for Leave to Amend to Allow Intervention

Plaintiffs seek to leave to have two additional representative plaintiffs, McNamara and Stanley, two persons allegedly strip searched while in Erie County custody, intervene in this action as possible class representatives (Docket No. 25, Pls. Atty. Affirm. ¶¶ 20, 21, Exs. Q, R). Plaintiffs state that plaintiff Tucker may no longer be representative of the class (Docket No. 25, Pls. Atty. Affirm. ¶ 10 n.1).  Although the proposed Amended Complaint alleges instances when McNamara and Stanley were arrested on petty offenses and were strip searched (id. Ex. R, proposed Amended Compl. ¶¶ 6, 7, 66-70, 71-74), and plaintiffs' counsel affirms that McNamara was strip searched several times during the proposed class period (id. ¶ 20), there is no separate sworn statement by the two proposed plaintiffs in support of their intervention in this action.

---

[7]Defendant Gipson did not object to the production issues raised by plaintiffs in their omnibus motion, hence he is not entitled to recover his costs in responding to plaintiffs' motion.

Plaintiffs argue that their motion to intervene is timely under Rule 24.  Defendants were put on notice about these possible intervenors on June 14, 2005 (id. ¶ 20, Ex. P).  Plaintiffs submitted with their motion a proposed Amended Complaint adding McNamara and Stanley as claimants (id. Exs. Q, R).  Plaintiffs argue that defendants are not prejudiced by adding these parties.  Plaintiffs state that they learned of Stanley shortly before the deadline to add parties or amend pleadings but knew of McNamara months beforehand.  They argue that the County Defendants' delay in producing booking sheets has hindered plaintiffs from making a more timely motion to intervene or for leave to amend (Docket No. 47, Pls. Reply Affirm. ¶¶ 9, 10).  Plaintiffs do not detail when they learned of Stanley as a potential representative plaintiff.  They do not explain why they failed to move to add McNamara as a plaintiff although conceding that they were aware of him months before learning of Stanley.

The County Defendants object to the timing of request, noting that McNamara and Stanley have not moved to intervene (Docket No. 29, County Defs. Memo. at 11-12).

Under the current Scheduling Order in this case (Docket No. 13), the deadline for motions to join parties and to amend pleadings was June 1, 2005.  Plaintiffs provided initial notice of these potential intervenors on June 14, 2005, suggested intervention on the record at the August 3, 2005, conference, and made their motion on August 10, 2005.  The County Defendants argue that there was no showing of good cause to justify an untimely amendment or motion for leave to add parties under Rule 16(b) and the Scheduling Order (Docket No. 29, at 11-12).  See Carnite v. Granada Hosp. Group, 175 F.R.D. 439, 446 (W.D.N.Y. 1997) (Foschio, Mag. J.) (Report & Recommendation), adopted, 175 F.R.D. at 441 (Arcara, J.); see also In re Milk Products Antitrust Litig., 195 F.3d 430 (8th Cir. 1999).  Defendants view this request as a veiled

24

motion for leave to amend the Complaint (see also Docket No. 25, Exs. Q, R, proposed Amended

Complaint).  Under Federal Rule of Civil Procedure 15(a) amendment of pleading after the time

to do so as of right requires either consent of all parties (not present here) or by leave of the

Court.  Under Rule 15(a) motions for leave to amend the complaint are to be freely given when

justice requires.  Granting such leave is within the sound discretion of the Court.  Foman v.

Davis, 371 U.S. 178, 182 (1962); Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321,

330 (1971).  "In the absence of any apparent or declared reason--such as undue delay, bad faith or

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely

given.'"  Foman, supra, 371 U.S. at 182 (quoting Fed. R. Civ. P. 15(a)).  Carnite addressed

plaintiff's failure to move to amend the Court's scheduling order and his failure to raise "even [a]

facially persuasive reason" to grant relief.  Carnite, supra, 175 F.R.D. at 448 (Foschio, Mag. J.,

R&R). Rule 24(b) intervention has to be timely to be granted and determining whether a motion

to intervene is timely is within this Court's sound discretion, United States v. Pitney Bowes,

25 F.3d 66, 70 (2d Cir. 1994).

Here, plaintiffs seek to have new parties intervene months after the deadline for such an

intervention without a reasonable basis for excusing the lateness, having been aware of at least

one of them within the time for a motion to add parties or for leave to amend the Complaint. The

fact that plaintiffs have yet to receive defendants' booking sheets does not explain their tardiness

in seeking leave to add these potential representative plaintiffs.  The absence of any statement

from these parties themselves is also striking; aside from plaintiffs' counsel's declaration the

Court has no indication that these potential intervenors are interested in being plaintiffs, much less potential class representatives.  Therefore, this portion of plaintiffs' omnibus motion is **denied**.

2.     Enlargement of Time to Move for Class Certification

The parties entered into a stipulation agreeing to extend the time for a motion to certify the class to October 21, 2005 (Docket No. 27), which this Court so ordered (Docket No. 28). Meanwhile, plaintiffs move to extend that deadline to 90 days from when defendants produce the booking sheets (Docket No. 25, Pls. Atty. Affirm. ¶ 22), later stating at oral argument that the deadline should start when <u>all</u> booking sheets were produced.  Defendants oppose this further extension (Docket No. 31, Gipson Atty. Affirm.; Docket No. 30, County Defs. Atty. Affirm. ¶¶ 92-95).

Once plaintiffs begin to receive data from the booking sheets, they will be in a better position to describe the potential class.  The time stipulated by the parties, to October 21, 2005, is not adequate for plaintiffs to move to certify the class.  Therefore, this portion of their omnibus motion is **granted in part**, but rather than set the start from when production of the booking sheets is complete (which is highly indefinite and, if defendants refuse to comply may delay certification indefinitely), the Court will set a deadline sixty (60) days from the stipulated October 21, 2005, date, to **December 20, 2005**, generous enough to make the motion while not dependent upon the vagaries of document production.  This, however, will be the <u>last</u> extension of the class certification deadline.  Whatever plaintiffs glean from the booking sheets they receive (and other discovery they obtain) should be sufficient to put together a motion to certify their proposed class.

26

III.     Ex Parte Communications with Sheriff's Deputies

Finally, the County Defendants complain that plaintiffs' counsel have contacted County

Sheriff's deputies ex parte whom defense counsel represents in this action.  The County

Defendants seek a protective order against such contacts (Docket No. 40), citing Disciplinary

Rule 7-104(a)(1), 22 N.Y.C.R.R. § 1200.35(a)(1), and its restriction on counsel contacting

represented parties in that manner, as well as the New York State Court of Appeals decision in

Niesig v. Team I, 76 N.Y.2d 363, 559 N.Y.S.2d 493 (1990), and its definition of who is a

corporate "party" under DR 7-104 that opposing counsel must avoid contacting.  They argue that

the lieutenants and sergeants plaintiffs seek to contact are supervisory personnel and the booking

deputies have decision-making authority that should preclude ex parte communications (Docket

No. 42, County Defs. Memo. at 3).  Any admission by the deputies, sergeants or lieutenants

would impute liability to the defendant County, therefore they should be beyond ex parte

communication (id.).  The County Defendants take the position that the booking deputies and

those in the booking process are also parties and are represented by the County Defendants'

counsel, given plaintiffs' claim of a de facto strip search policy (id. at 4, 1) and that these

deputies are policy makers each time they implement the County's intake policies (Docket

No. 49, County Defs. Reply Atty. Affirm. ¶¶ 3-6).  Plaintiffs reply that the sheriff's deputies

sought are rank and file officers who were witnesses and, under Niesig, are available for ex parte

interviews by plaintiffs' counsel (Docket No. 48, Pls. Memo. at 1, citing Niesig, supra,

76 N.Y.2d at 375, 559 N.Y.S.2d at 498-99).

Under Rule 26(c), the Court has power to protect against abuses in discovery.  Seattle

Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984).  The appropriateness of a protective order is a

balance of the litigation needs of the requesting party and the protect able interests of the party

from whom discovery is sought.  Mitchell v. Fishbein, 227 F.R.D. 239, 245 (S.D.N.Y. 2005).

This Court has broad discretion in issuing such a protective order.  Seattle Times, supra, 467 U.S.

at 36.

     A.     New York Disciplinary Rule 7-104(a)(1)

New York State Lawyer's Code of Professional Responsibility Disciplinary Rule 7-104

provides that "during the course of the representation of a client a lawyer shall not:  communicate

or cause another to communicate on the subject of the representation with a party the lawyer

knows to be represented by a lawyer in that matter unless the lawyer has prior consent of the

lawyer representing such other party or is authorized by law to do so."  DR 7-104(a)(1),

22 N.Y.C.R.R. § 1200.35(a)(1).  The issue, then, is who is a "party" governed by this disciplinary

rule.

     B.     Scope of Disciplinary Rule

Preliminarily, this motion raises an issue of whether the Code of Professional

Responsibility is binding in federal Court.  Cf. Niesig, supra, 76 N.Y.2d at 369, 559 N.Y.S.2d at

495 (Code of Professional Responsibility does not have force of law).  This Court is not bound

by the Code of Professional Responsibility promulgated by the New York State Bar Association

(or the Model Rules of Professional Conduct promulgated by the American Bar Association), but

views its ethical considerations and disciplinary rules as a source of guidance.  See Kubin v.

Miller, 801 F. Supp. 1101, 1114 n.9 (S.D.N.Y. 1992); but cf. W.D.N.Y. Local Civ. R. 83.1(b)(6)

(applicant attorneys agree to adhere faithfully to the Code of Professional Responsibility), (5)(G)

(attorneys seeking admission to practice before this Court must have read and be familiar with

Code of Professional Responsibility as interpreted by the U.S. Supreme Court, the U.S. Court of

Appeals for the Second Circuit, and this Court).  Other federal courts in this state, which require

adherence to the Code of Professional Responsibility, have applied DR 7-104.  See Miano v.

AC&R Advertising, 148 F.R.D. 68, 74 75 (S.D.N.Y.) (Katz, Mag. J.), adopted, 834 F. Supp. 632

(S.D.N.Y. 1993) (Sand, D.J.); Katt v. New York City Police Dep't, No. 95 Civ. 8283, 1997 WL

394593, at *4 (S.D.N.Y. July 14, 1997); Kennedo v. United States, No. CV-94-2252, 1995 U.S.

Dist. LEXIS 21451 (E.D.N.Y. Jan. 9, 1995); see also Docket No. 42, County Defs. Memo. of

Law at 3, 4; Docket No. 48, Pls. Memo. of Law at 2, attachments.  The district court in Katt

noted that the admissibility of employee statement is broader in federal court than New York

courts.  Katt, supra, 1997 WL 394593, at *4 (applying Fed. R. Evid. 801(d)(2)(D)).

As the Court of Appeals in Niesig, this Court will apply the Code of Professional

Responsibility here "as guidelines to be applied with due regard for the broad range of interests at

stake," 76 N.Y.2d at 369-70, 559 N.Y.S.2d at 495.

C.    Niesig

In Niesig, plaintiff's counsel sought to interview corporate defendant's employees who

witnessed an accident, raising the question of which corporate employees are considered the

"party" for DR 7-104(1)(A) purposes.  76 N.Y.2d at 367, 559 N.Y.S.2d at 494.  Plaintiff fell

from a scaffolding at a construction site while employed by the corporate third-party defendant.

Plaintiff sued and then sought to interview other employees as witnesses to the incident, id. at

367, 559 N.Y.S.2d at 494-95.  The third-party defendant corporation resisted the ex parte

interviews, citing DR 7-104.  The lower courts answered that the employees were automatically

the "parties" under DR 7-104 and could not be contacted ex parte by opposing counsel.  Id. at

368, 559 N.Y.S.2d at 494.

The New York Court of Appeals disagreed, holding (as to current employees) that both a

blanket ban on employee contact or restricting contact to "control group" of officials or

employees do not achieve the goals of that disciplinary rule.  See id. at 371-73, 559 N.Y.S.2d at

496-98.  The court adopted a test that a corporate "party" includes "corporate employees whose

acts or omissions in the matter under inquiry are binding on the corporation (in effect, the

corporation's 'alter egos') or imputed to the corporation for purposes of its liability, or

employees implementing the advice of counsel.  All other employees may be interviewed

informally."  Id. at 374, 559 N.Y.S.2d at 498.  As noted by the court, "in practical application,

the test we adopt thus would prohibit direct communication by adversary counsel 'with those

officials, but only those, who have the legal power to bind the corporation in the matter or who

are responsible for implementing the advice of the corporation's lawyer, or any member of the

organization whose own interests are directly at stake in a representation.'"  Id. at 374, 559

N.Y.S.2d at 498 (quoting Wolfram, Modern Legal Ethics, § 11.6, at 613 (Practitioners' ed.

1986)).  In Niesig, the Court of Appeals held that the employees that plaintiff wished to interview

fell into the category of all other employees that may be interviewed, since they were merely

witnesses to the event for which the corporate defendant was sued, id. at 375, 559 N.Y.S.2d at

498-99, allowing ex parte interviews of non-managerial employees, id. at 376, 559 N.Y.S.2d at

499.  Judge Bellacosa, in concurring in Niesig, noted that the bar on ex parte communication

from DR 7-104 also applies if the corporate employee retained counsel.  Id., at 378, 559

N.Y.S.2d at 500-01.

30

The County Defendants here emphasize that defense counsel also represents the sheriff's employees that plaintiffs seek to question, having obtained waivers from their union representation (Docket No. 42, County Defs. Memo. at 2; Docket No. 49, County Defs. Reply Atty. Affirm. ¶¶ 10-12, see id. ¶¶ 7-9, Exs. A, B (regarding the steps from County Attorney's representation to retain firm's representation of the County Defendants)).

     D.     Application

          1.     Niesig

At issue under DR 7-104 as construed in Niesig is whether the Sheriff's Department employees plaintiffs wish to contact are alter ego policy makers for the County and County Defendants or whose actions can be imputed to these defendant or who can bind the County. These employees currently are not parties in this action, although defense counsel for the County Defendants claims that it represents them.  At oral argument, the County Defendants attempted to distance themselves from Niesig, distinguishing the private sector facts in that case from the public sector implicated here.  The County Defendants, however, cite no authority distinguishing the public as opposed to private sector for corporate parties under DR 7-104.  Niesig, in fact, was applied in public sector cases.  E.g., Matter of Rahn v. Town of Greece, 226 A.D.2d 1105, 642 N.Y.S.2d 825 (4th Dep't 1996) (town defendant cannot prohibit petitioner or his counsel from interviewing town employees who voluntarily agreed to be interviewed); Quintana v. City of N.Y., 259 A.D.2d 296, 689 N.Y.S.2d 408, 409 (1st Dep't 1999) (not improper under DR 7-104 for plaintiff's investigator to interview superintendent, low-level official in defendant's agency).

Thus, there is a fact issue as to the role of the deputies plaintiffs intend to contact and whether they are policy makers or alter egos for the County.  Do the deputies that conduct inmate intake or conduct a strip search (or those who witnesses such conduct) bind the County?  The County Defendants' position is akin to the blanket ban on contact of all employees rejected by the Court of Appeals in Niesig, merely by arguing that all employees plaintiffs wish to interview are "policymakers" and that their decisions in processing arrestees and inmates constitutes policy making.  The line deputies that plaintiffs seek to interview certainly make decisions (such as how to conduct processing of arrestees, whether to search them and to what extent) but that does not make them "policymakers" that bind the County Defendants by their decisions.  Defense counsel is not arguing that these deputies were acting upon the advice of counsel (be it theirs or the County Attorney's office).

As a result, the actual rank and file Sheriff's Department officers who conducted searches are not policy makers and, under Niesig and DR 7-104, should be available for plaintiffs to conduct ex parte interviews.  The officers, absent a subpoena, are free to decline to speak with plaintiffs' counsel or condition the interviews as the officers see fit; in turn, plaintiffs counsel may seek to depose these employees or seek subpoenas to examine them.

Officers at the rank of sergeant or lieutenant and above, however, have administrative and management functions that could be policymaking imputed to the County or the Sheriff (such as directing certain actions be undertaken that could be construed as County policy).  These officers should **not** be contacted ex parte by plaintiffs.  Again, this does not preclude any contact by plaintiffs with sergeants or lieutenants or higher ranking sheriff's department officers and

32

officials; it merely requires plaintiffs to seek interviews on notice and coordination with defense counsel, or by deposition upon notice or subpoena.

2.      Claimed Representation of Individual Employees

The fact that the County Defendants' counsel claims to represent these non-parties is not material.  The defense and indemnification provisions of state and local law, N.Y. Pub. Off. Law § 18; Erie County Charter § 602 (see Docket No. 49, County Defs. Atty. Reply Affirm. Ex. A), only apply if the public employee is sued or is otherwise made a party in the action.  DR 7-104 prohibits communication with a "party" known to be represented by counsel on that matter; here, the rank and file deputies are not "parties" or known to be represented on this case, save defense counsel's declaration and union acquiescence.  This differs from the result in Pauling v. Department of the Interior, 964 F. Supp. 117, 118-19 (S.D.N.Y. 1997) (cf. Docket No. 42, County Defs. Memo. at 4), where the court sanctioned plaintiff from ex parte communication with a government employee that plaintiff's counsel knew (and conceded) was represented by the government's attorney.  While the deputies' union in this case may have authorized the County Attorney and his retained outside counsel to represent the deputies in this action, each deputy could have declined that representation (cf. Docket No. 48, Pls. Atty. Affirm. ¶ 4, Ex. C, current employee "told" that defense firm would represent her and she was denied option of retaining her own counsel).  Further, since these deputies are not parties, the only possible notice to plaintiffs that these employees were represented is the statements by defense counsel leading to this motion for a protective order.  See also McHugh v. Fitzgerald, 280 A.D.2d 771, 773, 719 N.Y.S.2d 785, 786-87 (3d Dep't 2001) (prohibition in DR 7-104 does not apply before representation begins and adversary must be aware of representation in order to have prohibition take effect).

33

Hence, the County Defendants' motion is **granted in part** as to Sheriff's Department

employees at the rank of sergeant or higher, but **denied in part** as to lower ranking Sheriff's

Department employees.

     E.     Reasonable Expenses

     Under Rule 26(c), if a protective order is granted at least in part, the Court applies

Rule 37(a)(4) standards to determine if sanctions are warranted.  Under the latter rule, if a motion

is granted in part and denied in part, the court may, after affording an opportunity to be heard,

apportion the reasonable expenses to the motion among the parties and persons in a just manner.

Fed. R. Civ. P. 37(a)(4)(C).  Included in the argument of these motions was discussion of the

reasonable costs for this motion.  The Court finds that each party should bear its own costs for

this motion.  See Payne v. Howard, 75 F.R.D. 465, 472 (D.D.C. 1977) (neither side took position

so unjustified as to warrant imposition of costs, ordering each party to bear its own costs).

IV.     Source of Sanctions

     The discussion above indicated instances when sanctions should be paid either for having

a prevailing discovery motion or having successfully resisting such motions.  The next issue is

who has to pay this sanction, the clients or counsel.  Courts have imposed discovery sanctions

against attorneys for their conduct that lead to discovery motions, see 8A Federal Practice &

Procedure, supra, § 2288, at 662 & n.23, including against government attorneys, see, e.g., U.S.

v. Sumitoma Marine & Fire Ins., 617 F.2d 1365 (9th Cir. 1980).  As noted at the beginning of the

Discussion in this Order, counsel have proceeded with rancor and vitriol in the conduct of this

case, in particular in the conduct of discovery and the motion practice surrounding discovery.

There is no indication that this was done at the express urging of the clients.  The three named

plaintiffs and the taxpayers of Erie County should not bear the results of the unreasonable and vexatious conduct, cf. 28 U.S.C. § 1927, to date of their counsel.  Therefore, counsel shall be responsible for any sanction imposed by this Court and shall not pass this costs to their clients.



This Order ends as it began.  Parties are reminded that the Court will no longer countenance the acrimony and bitterness in which pretrial matters have been handled.  The sniping, sparring, and gamesmanship[8] must stop.  If it persists, however, the Court may resort to various devices under the Rules and within its inherent supervisory authority to control the conduct of the parties and counsel in this case, for example micro management of discovery or sanctions under Rules 11, 16(f), 37, and 28 U.S.C. § 1927 for unreasonable and vexatious conduct by counsel.  This case needs to get to its merits and not dwell on arguments for the sake of vexatious litigation.  Continuing down the current path of this action will inevitably lead to further delays, added expense, and ultimately justice denied.

## CONCLUSION

For the reasons stated above, defendants County of Erie, Gallivan, Howard, Livingston, and Huggins' (the "County Defendants") joint motion to compel (Docket No. 16) is **granted in part, as modified, and with costs**; defendant Gipson's motion to compel (Docket No. 22) also is **granted, with some costs**, as described in detail above.  In particular, plaintiffs either are to produce discovery responses as to plaintiff **Julenne Tucker** or formally withdraw Tucker's claims within thirty (30) days of entry of this Order.

---

[8]Or, as succinctly and colorfully described at oral argument, "the crap."

35

The County Defendants' motion for a protective order (Docket No. 40) is **granted in part, denied in part** as described above, without costs to any party, cf. Fed. R. Civ. P. 26(c), 37(a)(4)(C).

Plaintiffs' motion for various forms of relief (Docket No. 25) is **granted in part** as described in detail above (namely production of booking sheets and ordering in camera inspection of defendants' privilege log documents, and extending time beyond the stipulated deadline for a motion for class certification, as described more fully above) and **denied in part** (namely interrogatory answers regarding the former cross-claim against defendant Gipson, an order of protection regarding the conduct of depositions; leave to amend the Complaint to add two additional plaintiffs).  Plaintiffs have until **December 20, 2005**, in which to file their class certification motion; this is the **final** extension of the class certification deadline.

As for the reasonable discovery motion costs sanctions associated with the prevailing parties to these several motions, the prevailing parties (as identified above and as limited above) are to file and exchange affidavits of their respective reasonable motion costs within five (5) business days from entry of this Order; the opposing parties then may file a response within five (5) business days of service of that affidavit.  **No reply papers will be accepted on the fee applications.**  The Court then will deemed the fee applications submitted as of the latter date and will issue an Order awarding costs. Once determined, such sanctions shall be paid **by the respective counsel** responsible for the expense.

So Ordered.

s/HBS
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
        September 26, 2005