UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ADAM PRITCHARD, et al.,

                Plaintiffs,

                                              **Hon. Hugh B. Scott**

              v.                                      04CV534C

                                                  **Order**

THE COUNTY OF ERIE, et al.,

                Defendants.

Before the Court are (a) the motion of the County Defendants[1] for a protective Order, pursuant to Fed. R. Civ. P. 26(c), against disclosure of documents "relating to non-strip search related incidents including assaults and attempted suicides and unrelated non-strip search e-mail/documents" (Docket No. 116, Notice of Motion[2] at 1; see also Docket No. 118, County Defs. Atty. Aff. (substituting ¶ 9 of the affidavit in Docket No. 116[3]), and (b) plaintiffs' motion to compel to produce all documents designated by defendants as "felony" documents, and to

---

[1]The "County Defendants" consist of Erie County, its former and present Sheriffs and named Sheriff's Department officials who were allegedly responsible for the Erie County Holding Center and the Erie County Correctional Facility, all of the defendants in this action save defendant Gipson (who is separately represented).

[2]The County Defendants filed in support of their motion an attorney's affidavit with exhibits, Docket Nos. 116, 118, and memorandum of law, Docket No. 116.
    In opposition, plaintiffs filed a reply affirmation from their attorney and a memorandum of law, Docket No. 126; see Docket No. 125 (same motion papers, but not properly signed).

[3]The County Defendants' motion for leave to amend their prior motion is **granted**, see Docket No. 122.

allow plaintiffs to inspect the original documents responsive to their demands (Docket No. 120[4]). In support of this motion are defense counsel's affidavit with exhibits (surrounding the belated County production of three e-mails) and memorandum of law (Docket No. 116).

Given the most recently amended Scheduling Order for this action (see Docket No. 103) and its declaration that it would not be extended further (id. at 13[5]; see also Docket No. 52, Order of Sept. 26, 2005, at 35 (stating that case needed to get to its underlying merits); Docket No. 103, Order of Mar. 20, 2006, at 13 (same)), the simplicity of the discovery issues involved, and to keep this action moving to eventual consideration of its merits, the briefing schedule for these latest motions was truncated. Responses to these motions were due by June 21, 2006, and the motions were deemed submitted (without further reply or oral argument) on June 21 (Docket Nos. 117, 121, Orders of June 14 and 15, 2006).

## BACKGROUND

This is yet another excursion into discovery motion practice in this civil rights action that alleges a potential class action. Familiarity with the factual and procedural history of this case, including the prior motions (see Docket Nos. 16, 22, 25, 40, 80, 86, 98, 107, 110) and Orders in this case (see Docket Nos. 52, 53, 71, 78, 103, 106, 113, 114), is presumed. Plaintiffs are three

---

[4]Corrected from Docket No. 119. Docket No. 119's motion is therefore **terminated**.
In support of their motion, plaintiffs filed an attorney's affirmation with exhibits, Docket No. 120.
In opposition, the County Defendants submitted an attorney's reply affirmation, Docket No. 124, and defendant Gipson's attorney also filed an affirmation, Docket No. 123, noting that plaintiffs' motion did not address Gipson's production, id. ¶ 2.

[5]That Amended Scheduling Order set a deadline of May 1, 2006, for class certification discovery; July 10, 2006, for a class certification motion; and September 12, 2006, for concluding all discovery in the case-in-chief. Docket No. 103, at 12-13, 13-14.

persons who were detained in the custody of Erie County for non-felony offenses and they allege that they (and others similarly situated, who were in defendants' custody some time between July 22, 2001, to the present) were strip searched without cause while in the custody of the Erie County Sheriff (Docket No. 1, Compl. ¶ 15).

*County Defendants' Motion for Protective Order*

Following production of three e-mails by defendant McCarthy Gipson, the County Defendants reviewed their files to locate those e-mails. Eventually, they were found in a file of non-produced documents with several hundred non-strip search related documents (Docket No. 116, County Defs. Atty. Aff. ¶ 7). The County Defendants produced their copies of the three e-mails (id. ¶¶ 8-9, Ex. C, B; see Docket No. 118, County Defs. Atty. Aff. ¶ 9, Ex. C), but not the other documents that were in the files where the County Defendants found the e-mails (Docket No. 116, County Defs. Atty. Aff. ¶ 10). Plaintiffs, in reply, now contend that other responsive documents were produced from these "felony" files (Docket No. 126, Pls. Atty. Reply Affirm. ¶ 2).

According to the County Defendants' counsel, these non-strip search documents consist of approximately 550 pages, some dating back to 1999 (Docket No. 116, County Defs. Atty. Aff. ¶ 12). These documents deal with assaults between inmates, suicide attempts, HIPPA authorization forms, sexual harassment training, and other unrelated matters (id.). The County Defendants offered to produce these items to plaintiffs subject to a confidentiality agreement (cf. Docket No. 53, Order for confidentiality of disclosed booking records) but plaintiffs' counsel refused (Docket No. 116, County Defs. Atty. Aff. ¶ 13). The County Defendants also have offered to produce the documents for in camera inspection (id. ¶ 20). Defendant Gipson also

3

suggests that the Court review these documents in camera to determine their relevance (Docket No. 123, Gipson Atty. Affirm. ¶ 7).

The County Defendants report that plaintiffs have orally and by e-mail[6] insisted upon production of these documents, contending that plaintiffs have not made a formal request for their production (Docket No. 116, County Defs. Atty. Aff. ¶¶ 10, 14). This disregards, however, plaintiffs' discovery demands which sought production of documents related to strip searches of felony detainees (Docket No. 120, Pls. Atty. Affirm. Ex. A, at 4, document request number 2). The County Defendants generally objected to producing felony documents as not relevant to this action (id. Ex. B, at 1), but the County Defendants agreed to produce responsive documents (id. at 4-5).

The County Defendants argue that these non-strip search documents are not relevant to this case and need not be produced. Some predate the July 2001 starting date for the proposed class (see Docket No. 116, County Defs. Atty. Aff. ¶ 12). They argue that the documents are not responsive to plaintiffs' demands and are not relevant to their strip search allegations (id. ¶¶ 11, 12, 15) but their disclosure in this case may impact other, wholly unrelated cases (id. ¶ 16; Docket No. 116, County Defs. Memo. of Law at 5).

*Plaintiffs' Motion to Compel*

Plaintiffs' document demand included seeking production of incident reports, logbook entries, and other writings regarding felony detainee strip searches (Docket No. 120, Pls. Atty. Affirm. Exs. A (pls. document demand) at 4, request number 2, B (County Defs. response) at 4-

---

[6]Although defense counsel has not attached in support of their motion a copy of the e-mail communication between counsel dealing with this issue, plaintiffs in their motion include some of that communication, see Docket No. 120, Pls. Atty. Affirm. Exs. G, H, K.

5); cf. id. Ex. A at 4, request number 1 (documents regarding non-felony detainees)). They contend that the County Defendants initially agreed to produce these felony documents, but then unilaterally proposed a protective order regarding them (Docket No. 120, Pls. Atty. Affirm. ¶ 9). Plaintiffs claim that the over 500 pages of documents the County Defendants refuse to produce are "felony" documents, represented to plaintiffs as related to felony strip search documents (Docket No. 120, Pls. Atty. Affirm. ¶¶ 5, 7). Since the three e-mails were "misfiled" among these "felony" documents, plaintiffs now seek to inspect the "felony" documents (see id. ¶ 8). Plaintiffs argue that defense counsel first stated that plaintiffs never sought felony materials and then claimed that the "felony" documents were included in a privilege log; plaintiffs now conclude that both of defense counsel's assertions were false (id. ¶ 7). On the County Defendants' offer to produce the documents under a confidentiality stipulation, plaintiffs refused and now argue that the defendants fail to meet their burden for sealing these records from the public (id. ¶ 9). Plaintiffs believe that the County Defendants waived any objection to production of these documents by not detailing their existence either in their production or in a privilege log (id. ¶ 10).

Plaintiffs also seek to inspect the originals of the County Defendants' records (now limited to documents in the possession of the Sheriff's Department's Office of Professional Standards and the County Attorney's office, Docket No. 126, Pls. Atty. Affirm. ¶ 10), because they believe that some documents have been retained by the Sheriff's Department's Office of Professional Standards but have not been produced by these defendants (Docket No. 120, Pls. Atty. Affirm. ¶ 11) and plaintiffs obtained some other documents from third parties that these defendants have yet to produce (id. ¶ 12, Ex. J, at 18, e-mail from Kristin Machelor to Tom

5

Mitchell). Plaintiffs justify their request by the alleged "pattern of deception and discovery abuse in this litigation" by the County Defendants (id. ¶ 14), calling a privilege log considered in an earlier motion "clearly deceptive" and "continued to disrupt deposition testimony with the use of speaking objections despite a Court Order detailing appropriate deposition conduct" (id.; cf. Docket No. 52, Order at 20-21 (at **defendants'** request, Court reminded and admonished all counsel not to make speaking objections during depositions)[7]).

Plaintiffs do not seek sanctions now for the above conduct but reserved the right to make a later motion on this conduct and other conduct that occurred during this action (Docket No. 120, Pls. Atty. Affirm. ¶ 15). They certify their good faith in trying to resolve this matter informally by noting their attempts to obtain these documents or to review defendants' original files short of motion practice (id. ¶ 16, Ex. K).

In opposition, defendant Gipson notes that plaintiffs in effect argue the merits of their case in a discovery motion, raising "irrelevant factual assertions" which have yet to be established on the record (Docket No. 123, Gipson Atty. Affirm. ¶¶ 3, 4). The County Defendants respond to plaintiffs' motion by reasserting the grounds the County Defendants raise in their motion for a protective order, that the materials plaintiffs seek from the "felony" files is irrelevant to this action and need not be produced (Docket No. 124, County Defs. Atty. Reply Affirm. ¶¶ 3, 6). The County Defendants call these documents "non-strip search" documents to reaffirm that they are not relevant to this strip search case (id. ¶ 7). They contend that plaintiffs' alternative request to inspect the original documents would be "unnecessary, impractical and

---

[7]Plaintiffs' present motion, however, does not seek sanction for this disruptive conduct or specify when such conduct occurred. But this conduct is the type that the Court chided all parties to avoid in conducting depositions in this case, Docket No. 52, Order at 20-21, 35.

would result in significant delay to the case" (id. ¶ 21) since the original documents, obtained from several locations and returned to them following production, would need to be retrieved again from their original locations (id. ¶¶ 23-25). They state that gathering again the original documents, when duplicates were made and produced, would be burdensome and time-consuming (id. ¶ 31).

## DISCUSSION

This latest series of motions revolve around the question of whether (or upon what conditions) defendants should be compelled to produce what plaintiffs term "felony" documents, the about 500 pages of documents that had with them the three e-mail messages from defendant Gipson. The County Defendants seek to preclude their disclosure while plaintiffs seek their production and allowing them to inspect the original documents.

I.     Applicable Discovery Standards

Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed. R. Civ. P. 37(a)(2)(A). Similarly, under Rule 26(c), prior to obtaining a protective order the movants must certify that they have in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court intervention, Fed. R. Civ. P. 26(c). Under Rule 26(c), the Court has power to protect against abuses in discovery. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984). The appropriateness of a protective order is a balance of the litigation needs of the requesting party and the protectable interests of the party from whom discovery is sought. Mitchell v. Fishbein,

227 F.R.D. 239, 245 (S.D.N.Y. 2005). This Court has broad discretion in issuing such a protective order. Seattle Times, supra, 467 U.S. at 36.

Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention. See 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d 1994). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1).

II.   Protective Order

The County Defendants argue that the documents that were in the same files as the three produced e-mail messages are not relevant to this case. The County Defendants certified their good faith in avoiding this motion by arguing that the documents sought were not responsive to plaintiffs' demand and then offering production of these documents under an confidentiality stipulation that plaintiffs rejected (Docket No. 116, County Defs. Atty. Aff. ¶ 17; see Docket No. 120, Pls. Atty. Affirm. ¶ 9, Ex. G).

III.   Motion to Compel

Plaintiffs have outlined their attempts to resolve this matter short of their present motion (Docket No. 120, Pls. Atty. Affirm. ¶¶ 9, 16, Exs. G, H, K), certifying their good faith efforts toward a non-judicial resolution. They contend that they asked for these documents and defendants initially agreed to produce them.

IV.   Resolution

    A.   County Defendants' Motion for a Protective Order

It is questionable how non-strip search documents, including those regarding sexual harassment, HIPPA authorizations, suicide attempts, or inmate assaults, are relevant to plaintiffs' strip search claims. While plaintiffs proclaim that this action "addresses the willful misconduct and incompetence of public officials in violating the civil rights of tens of thousands of pretrial detainees" (Docket No. 126, Pls. Memo. of Law at 3), the particular violation alleged here is strip searches; other conduct, however egregious in the abstract, is not now pending before this Court by these plaintiffs. But all that is in the record is counsel's representation of what those 500 or so documents contain, without a log giving general descriptions of particular documents therein. Given that three relevant e-mail messages (and other documents, according to plaintiffs) were included with that 500, it is possible that other, relevant, but yet to be produced, documents may exist. The County Defendants did not create a log generally identifying the documents separately, although they alleged to plaintiffs that they had. The County Defendants offered to furnish these documents for <u>in camera</u> inspection (Docket No. 116, County Defs. Atty. Aff. ¶ 20). The Court is reluctant to serve as the screen for defendants' production each time there is a discovery dispute (and disfavors this piecemeal fashion of raising objections to discovery and eventual multiple motions to compel). Instead, the County Defendants are to **produce a log of the 500 or so documents**, identifying the document by Bates stamped numbering, date, sender, intended recipient, subject and other identifying information, indicating for each document the reasons for their non-production with enough specificity that the Court and plaintiffs could determine the reasons why a given document is not being produced. If this log, like a privilege

log, is not specific enough, or if plaintiffs challenge the classification of any listed documents, the Court may require **in camera inspection** of these documents to determine their relevance to this action, here strip search claims by non-felony detainees. Defendants, of course, are free to serve responsive documents found in the process of creating this log without awaiting plaintiffs' demand or further Court action.

The County Defendants have twenty (20) days to serve and file this log. Plaintiffs will then have ten (10) business days to respond identifying any particular document or class of documents they still seek produced and the reason why they dispute defendants' characterization of the relevance of those documents. This process will be performed expeditiously and previously set deadlines for this case, including class certification motion, **shall not be adjourned**.

Thus, the County Defendants' motion for a protective order (Docket No. 116) is **denied in part, granted in part** (as to movants' offer to produced the disputed documents for in camera inspection); plaintiffs' motion to compel (Docket No. 120) is **granted in part** (as to production of a "objections" log of the documents in question).

B.     Plaintiff's Motion to Compel

As for plaintiffs' request to inspect defendants' original records (Docket No. 120), that request is **denied**. Plaintiffs' request is burdensome, given that defendants have returned the documents to their original locations and the request ventures close to the border of attorney-work product, that is challenging defense counsel's decisions of what they believe is relevant and responsive to plaintiffs' discovery demands by reviewing the originals of the materials culled by defense counsel. Despite stating their doubts about the extent of the County Defendants'

production, plaintiffs have not cited authority for this unusual remedy. In responding to a Rule 34 discovery demand, the responding party has to serve a response either agreeing with the discovery process and a schedule set forth by the demanding party, set forth a different schedule, or set out the responding party's objections to the disclosure, see 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2213, at 425, 427 (Civil 2d ed. 1994), thus, the responding party has some control as to how it will produce the items demanded, see id. at 427 & n.12. Under Rule 34(b), the responding party is to produce materials "as they are kept in the ususal course of business or shall organize and label them to correspond with the categories in the request." The County Defendants, in their initial response to plaintiffs' demands (see Docket No. 120, Ex. B), offered to make supplemental materials available at defense counsel's offices at a mutually convenient date. The nature of plaintiffs' latest motion should cause defense counsel to redouble their efforts to review their existing materials for responsive documents as well as their Rule 26(e) obligations to supplement their production. The exercise of creating and serving the "objections" log should avoid the necessity of having plaintiffs' counsel inspect defense counsel's files.

V.      Parties' Acrimony

Finally, the moving papers from plaintiffs and defendants are replete with attacks this Court has cautioned the parties against. For example, plaintiffs accuse defense counsel of engaging in a "pattern of deception and discovery abuse" (Docket No. 120, Pls. Atty. Affirm. ¶ 14) and reporting defense counsel's conduct during depositions (id.) (but not seeking sanctions for that conduct). They called defendants' mandamus petition "frivolous," causing plaintiffs' counsel to distrust the defense (Docket No. 126, Pls. Atty. Reply Affirm. ¶ 4). Defense counsel

vehemently deny this, calling plaintiffs' counsel's statements false and "offensive," "inaccurate and uncivil" (Docket No. 124, County Defs. Atty. Affirm. ¶¶ 33, 34). While both sides assert that they attempted in good faith to resolve this discovery dispute, their papers show that their "good faith" was, at best, at the margin.

Unfortunately, the discovery rules do not provide for sanctions payable to the Court for counsel's or party's conduct; all of Rule 37 sanctions are in terms of the injury suffered by a party in the discovery process. But other provisions, such as 28 U.S.C. § 1927 for unreasonable and vexatious conduct by counsel and Federal Rules of Civil Procedure 16(f) (for failing to obey the Court's pretrial orders, including the Order, Docket No. 52, to avoid such conduct going forward), governs the conduct of counsel in this case.

Counsel continue to be reminded of this Court's admonition raised first in the earliest discovery Order entered that

> "the Court will no longer countenance the acrimony and bitterness in which pretrial matters have been handled. The sniping, sparring, and gamesmanship must stop. If it persists, however, the Court may resort to various devices under the Rules and within its inherent supervisory authority to control the conduct of the parties and counsel in this case, for example micro management of discovery or sanctions under Rules 11, 16(f), 37, and 28 U.S.C. § 1927 for unreasonable and vexatious conduct by counsel. This case needs to get to its merits and not dwell on arguments for the sake of vexatious litigation. Continuing down the current path of this action will inevitably lead to further delays, added expense, and ultimately justice denied."

(Docket No. 52, Order, at 35, footnote omitted).  The Court is still watching for such conduct and, when appropriate, will not hesitate to impose its own control to avoid such conduct in the future.

## CONCLUSION

For the reasons stated above, the County Defendants' motion for a protective order (Docket No. 116) is **denied in part, granted in part** as described in detail above.  The County Defendants are to produce an "objections" log, describing the documents they decline to produce to plaintiffs and the reasons for that declination, within twenty (20) days; plaintiffs may respond to the contents of this log within ten (10) business days.  As a result, plaintiffs' motion to compel (Docket No. 120) is **granted in part** in so far an the "objections" log will be created.

So Ordered.

*/s/ Hugh B. Scott*
Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
       June 26, 2006