UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ADAM PRITCHARD, et al.,

                         Plaintiffs,                        **Hon. Hugh B. Scott**

                                                                   04CV534C

                                                                    **Order**

             v.

THE COUNTY OF ERIE, et al.,

                         Defendants.

      Before the Court is plaintiffs' motion for court supervision of deposition of Kristin Machelor (Docket No. 140[1]) as well as some defendants' alternative application for similar relief (Docket No. 149, County Defs. Atty. Affirm. ¶ 15). The County Defendants[2] alternatively sought denial of this deposition (id. Wherefore cl. (A)) or precluding lines of questioning plaintiffs could ask Machelor (id. Wherefore cl. (B)), but have not formally moved for a protective order or to quash the underlying subpoena. This is all far afield from the major procedural issue pending in

---

[1] Plaintiffs submitted in support of this motion their attorney's affirmation with exhibits, memorandum of law, Docket No. 140.
     In opposition, Machelor submitted her attorney's affirmation and memorandum of law, Docket No. 147. Defendants each submitted attorneys' affirmations in opposition to plaintiffs motion, Docket Nos. 148 (Gipson), 149 (County Defendants) (with exhibits). The County Defendants also submitted a memorandum of law, Docket No. 149.

[2] As previously identified in other Orders, they are former Sheriff Gallivan, current Sheriff Howard, Sheriff's Department officials Huggins and Livingston, and the County of Erie.

this case (that is, plaintiffs' class certification motion (Docket No. 131)) as well as the underlying merits in this case.

Responses to this motion were due on or before September 18, 2006, and any reply was due by September 25, 2006. Oral argument was held on October 11, 2006, following the previously scheduled settlement conference. (Docket No. 142.) This motion was deemed submitted following that argument (Docket No. 151).

## BACKGROUND

As the parties are well aware, this case is a putative class action (see Docket No. 131) asserted by three individuals who were detained by the Erie County Sheriff in either the Erie County Holding Center or the Erie County Correctional Facility. Plaintiffs allege that they were strip searched without individualized suspicion while in the County Defendants' custody.

Pertinent to this motion, plaintiffs obtained in discovery several e-mails sent by former Assistant County Attorney Kristin Machelor to individual defendants and other Sheriff's Department officials regarding the Sheriff's Department's evolving policies regarding inmate strip searches. The parties engaged in a great deal of motion practice surrounding production of these e-mail transmissions (Docket Nos. 25, 80, 107 (motions); 52, 78, 106, 113 (orders), including a pending writ of mandamus before the United States Court of Appeals for the Second Circuit, see In re Erie County (Pritchard v. Erie County), No. 06-2459 (2d Cir. 2006); see Docket No. 149, County Defs. Atty. Affirm. Ex. A (2d Cir. notice of writ of mandamus scheduled for consideration during motion day of September 12, 2006)). To date, the Second Circuit has not ruled on this writ of mandamus.

Plaintiffs next subpoenaed Machelor (Docket No. 140, Pls. Atty. Affirm. ¶ 4, Ex. C) to produce documents and appear at a deposition.  According to plaintiffs' counsel, Machelor's attorney indicated that she would refuse to answer questions about these e-mails, claiming that they were privileged attorney-client communications and that this Court had not resolved the issue of the privileged nature of the communications (id. ¶ 4).  At oral argument, Machelor's counsel indicated that he would instruct his client only to answer questions confirming whether she wrote the e-mails in questions and not other questions regarding her thought processes.

Plaintiffs now seek either leave to conduct Machelor's examination in Court before the undersigned or to have the Court available by telephone to resolve disputes that may arise from this deposition.  They also move for the Court to set a date (or series of possible dates) for this deposition.  (Id. ¶ 5).  Plaintiffs do not claim that the Court would have to attend the entirety of the deposition (id.) but only those parts in which Machelor (or defendants) raise an objection requiring a ruling (id.).  But the nature of plaintiffs' potential questioning (for example, detailing how Machelor came to writing the e-mails in question, her other communication to defendants) may require such supervision over the entire deposition.

Machelor objects to the examination as an invasion of privileged attorney-client communication with her former client (see generally Docket No. 147), as the defendants all join in that objection (see generally Docket Nos. 148, 149).  Machelor and defendants all contend that her deposition would breach attorney work product privilege (Docket No. 147, Machelor Atty. Affirm. ¶ 14; Docket No. 149, County Defs. Atty. Affirm. ¶ 4; Docket No. 149, County Defs. Memo. of Law at 2, 5-7; Docket No. 148, Gipson Atty. Affirm. ¶ 6).  Machelor argues that deposing "counsel for an opposing party during discovery is disfavored" (Docket No. 147,

Machelor Atty. Affirm. ¶ 15; see also Docket No. 148, Gipson Atty. Affirm. ¶ 6). But all acknowledge that she is a former Assistant County Attorney (see, e.g., Docket No. 147, Machelor Atty. Affirm. ¶ 3) and clearly not counsel for defendants in this action. Machelor argues that plaintiffs are attempting to create an "impossible conflict" between her and her former client (Docket No. 147, Machelor Atty. Affirm. ¶ 22). While she owes ethical obligations to her former client, see 22 N.Y.C.R.R. §§ 1200.27 (DR 5-108, conflict of interest regarding former client), 1200.21 (DR 5-102, lawyer as witness), 1200.45(b) (DR 9-101(b), obligation of former government attorney to former government client), those are not the same as an attorney whom her opponent is trying to turn into a witness in the case.

The County Defendants also seek an Order precluding plaintiffs "from questioning Ms. Machelor with respect to her mental impressions, conclusions, opinions, legal theories, or advice to the County Defendants as such a deposition is unnecessary," (Docket No. 149, County Defs. Atty. Affirm. ¶ 14), or for Court supervision of this deposition to preclude such questioning by plaintiffs (id. ¶ 15). Note, no one has moved to quash the subpoena, nor has served a timely objection to the subpoena, cf. Fed. R. Civ. P. 45(c)(2(B), nor has anyone moved for a protective order, cf. id. R. 26(c).

**DISCUSSION**

I.   Supervised Deposition

Again, discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention. See 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d 1994). While not citing to the Federal Rules of Civil Procedure in

support of their motion, plaintiffs essentially move to compel Machelor's testimony in front of the Court or with judicial supervision of the deposition, cf. Fed. R. Civ. P. 37(a)(2)(B), (3), 30(c), anticipating problems from this witness before she testifies.  In their alternative argument that plaintiffs' deposition of Machelor should be controlled by Court supervision (see Docket No. 149, County Defs. Memo. at 8), the County Defendants also do not cite authority for such supervision.  Courts do have the discretion to order depositions to occur in the courthouse under judicial supervision, see 8A Federal Practice and Procedure, supra, § 2112, at 89-90.

Plaintiffs (and, for different purposes, the County Defendants) seek Court supervision of this deposition, either to be held in the courtroom or with the Court available to be contacted as issues arose.  The County Defendants, while arguing against judicial supervision as sought by plaintiffs, alternatively urge for Court supervision of this deposition to preserve their attorney-client privilege as well as attorney work product privilege (see Docket No. 149, County Defs. Affirm. ¶ 15).

Plaintiffs only cite the United States District Court for the Southern District's decision in Condit v. Dunne, 225 F.R.D. 100, 112 (S.D.N.Y. 2004) (Docket No. 140, Pls. Memo. at 2), involving discovery in a sensational slander action arising from a notorious congressman and the mysterious disappearance and death of Chandra Levy.  In Condit, defendant moved to compel plaintiff to answer questions in three areas he refused to answer during his deposition, 225 F.R.D. at 102, 105.  After setting forth the scope of allowed question in those three areas, see id. at 108-12, Judge Leisure there found that the parties in that case "would benefit from on-hand Court supervision of their depositions," referring that supervision to a Magistrate Judge to supervise consistent with Federal Rule of Civil Procedure 30 and the court's Order, id. at 112-13.

Here, plaintiffs seek to examine a non-party witness who is an attorney ostensibly about four series of e-mail transmissions she sent to her client, and seeking an advance ruling on the scope of that examination, essentially a motion to compel before the witness has refused to answer. While this Court once held that (if the parties persisted in their vexatious behavior) it may resort to various devices including micro management of discovery (Docket No. 52, Order at 6, 35), Court supervision of this witness's deposition is **not** warranted here and the Court **declines** to exercise its discretion in supervising this deposition.

While an advance ruling on the scope of a deposition may be desirable to the parties (by providing immediate guidance prior to or as the examination proceeds, avoiding multiple motions and interruptions in the examination), the normal practice (absent a motion to quash the subpoena or for a protective order) is to allow a deposition to go forward and have the parties complete as much of it as possible before reaching an impasse. In that way, the parties create a record of where questionable inquiries, objections or assertions of privilege arose and furnish a context for the disputes when a party makes a motion to resolve the dispute (either to compel answers or to enforce privileges and objections). Based upon a concrete record, the Court facing that later motion then can determine whether a particular line of questions should or should not be answered or whether an objection or privilege has merit. This is especially beneficial where, as here, the very issue of the scope of allowable testimony is (in one sense) pending before the Second Circuit, cf. In re Erie County, supra, No. 06-2459. Rule 30(d) contemplates that a deposition would commence and, if determined that it was either "conducted in bad faith or in such a manner as unreasonably to annoy, embarrass, or oppress the deponent or party," relief could be sought from the Court either to end it or to restrict its scope, Fed. R. Civ. P. 30(d)(4).

In this regard, the only authority cited by any party for judicial supervision, Condit, supra, 225 F.R.D. 100, is distinguishable; that case did not involve an anticipatory request for judicial supervision of a contentious deposition.  See also Jeffrey W. Stempel, 7 Moore's Federal Practice--Civil § 30.06, at 30-34 (2006) (in rare instances, Court may order deposition before a "discovery master," usually employed after repeated applications to the Court to resolve discovery issues or numerous objections, interruptions or other inappropriate behavior, citing Van Pilsum v. Iowa St. Univ. of Science & Tech., 152 F.R.D. 179, 181 (S.D. Iowa 1993)).  Rather, judicial supervision was ordered after the parties attempted to conduct the deposition and reached impasses that called for judicial intervention and (sensing the contentiousness of the issues involved) ultimately judicial supervision, Condit, supra, 225 F.R.D. at 105, 112.

Here, plaintiffs seek an advance ruling as to the propriety of asking certain questions to Machelor; similarly, the County Defendants in seeking judicial supervision (and to a lesser degree Gipson) also seek an advance ruling as to the viability of the privileges they intend to assert.  Machelor's entire deposition probably will consist of questions she would claim is subject to attorney-client or work product privileges, not only to authenticate and explain her e-mails to her former clients but possibly other communications she had with them relative to this action.  At oral argument, plaintiffs indicated that they may ask about Machelor's communications with her client and with policy makers, and her factual assertions in the e-mail transmissions.  Plaintiffs appear to stretch the ruling allowing disclosure of the e-mails as removal of all privilege regarding Machelor.  Note, Machelor has not moved to quash the subpoena served upon her, but instead expressed her intention (through counsel) not to answer questions she believed would infringe upon that attorney-client privilege as to her former clients

or her attorney work product privilege (see Docket No. 140, Pls. Atty. Affirm. ¶ 4; Docket No. 147, Machelor Atty. Affirm. ¶¶ 7-8, 14; Docket No. 147, Machelor Memo. of Law at 4-5).  The parties are trying to obtain an advisory opinion as to the propriety and scope of the questioning of Machelor regarding her communications with her former clients, absent a record to enable the Court to render such an opinion.  Plaintiffs present this issue in a vacuum, without disclosing what questions they intend to ask and what the witness's (or other parties') objections to those questions might be, aside from stating their intention "to question her extensively about representations made in those email [sic], and about her efforts to change county policy relative to strip searches" (Docket No. 140, Pls. Atty. Affirm. ¶ 5).

Rather than guessing further what the line of questioning or the objections to that line will be that may require judicial supervision, plaintiffs' motion for Court supervision of deposition of Machelor is **denied**.

Plaintiffs also asked that the Court set the date for this deposition (Docket No. 140, Pls. Motion ¶ 5).  This deposition will be held on **Friday, November 24, 2006**, starting at **9:30 am**; the witness and counsel for the parties should make themselves available at that date and time for this deposition.  After the parties reach a mutually agreed upon site for the deposition[3], plaintiffs' counsel should conduct that deposition and ask the questions they intend to, with Machelor or defendants preserving form objections, see Fed. R. Civ. P. 30(d)(1); cf. Hall v. Clifton Precision,

---

[3]Given the acrimonious history in this case and the acute ire of this particular discovery issue, compare Docket No. 52, Order at 5-6, 35, if the parties cannot arrive at a mutually agreed upon date the Court has means of establishing such a date, see Avista Management, Inc. v. Wausau Underwriters Ins. Co., No. 05cv1430, Docket No. 106, 2006 U.S. Dist. LEXIS 38526 (M.D. Fla. June 6, 2006) ("rock, paper, scissors" to determine site for deposition, absent parties agreement), order vacated, Docket No. 109 (Order June 26, 2006).

150 F.R.D. 525 (E.D. Pa. 1993); <u>DirecTV v. Rowland</u>, Case No. 04CV297, Docket No. 45[4] (W.D.N.Y. May 27, 2005) (Scott, Mag. J.) (sanctioning defense counsel for his conduct during defendant's deposition). (<u>See also</u> Docket No. 52, Order at 20-21.) This deposition shall be conducted for no longer than seven hours, <u>see</u> Fed. R. Civ. P. 30(d)(2). Note, counsel may not instruct a witness like Machelor not to answer save to preserve a privilege and counsel are to make objections in a non-argumentative and non-suggestive manner, Fed. R. Civ. P. 30(d)(1), that any impediment, delay or other conduct to frustrate the examination may be sanctionable, <u>id.</u> R. 30(d)(3). But such an Order to control the conduct of that deposition will occur here only <u>after</u> it has begun and a record has been made to show the problems leading to judicial intervention. If, after that deposition, plaintiffs still need to have objected and unanswered questions answered, they can move (upon this developed record) to compel her testimony, <u>id.</u> R. 37(a)(2)(B), (3); similarly, defendants can move for a protective order to prevent plaintiffs from insisting upon answers to these questions. The benefit of this approach of first attempting to conduct the deposition then seeking judicial intervention on particular matters is that there is a fleshed out record that focuses the Court's inquiry on whether a particular question is or is not privileged.

II.     Should This Deposition Go Forward?

Machelor suggests (<u>see</u> Docket No. 147, Machelor Memo. of Law at 7-8) and the County Defendants urge (Docket No. 149, County Defs. Atty. Affirm. ¶¶ 14-15, Wherefore cl. (A), (B)) that Machelor's deposition either not occur at all or that plaintiffs be restricted to not obtaining her mental impressions, conclusions, opinions, legal theories or advice (Docket No. 149, County

---

[4]Appended to this Order is a copy of the Order in <u>DirecTV v. Rowland</u>.

Defs. Atty. Affirm. Wherefore cl. (B)) to uphold the attorney-client privilege. Gipson takes the tact of seeking an Order which merely preserves his ability to invoke the attorney-client privilege (Docket No. 148, Gipson Atty. Affirm. Wherefore cl.); no order is needed to reaffirm defendants' ability to object and make a record of such objections, see Fed. R. Civ. P. 30(d)(1).

Rule 30(d)(4) allows the Court to restrict the scope or cease entirely a deposition if "conducted in bad faith or in such a manner as unreasonably to annoy, embarrass, or oppress the deponent or party." The issuance of an Order to terminate a deposition is within the sound discretion of the Court and, according to one commentator, is sparingly used, 7 Moore's Federal Practice--Civil, supra, § 30.51, at 30-79 (2006). "To obtain a protective order under Rule 30(d), the moving party has the burden of proving that the examination was being conducted in bad faith or in such a manner as to unreasonably annoy, embarrass, or oppress the deponent or a party," id.; see Hearst/ABC-Viacom Entertainment Servs. v. Goodway Mktg., Inc., 145 F.R.D. 59, 62 (E.D. Pa.), modified on other grounds, 815 F. Supp. 145 (E.D. Pa. 1992).

Again, rather the surmise what direction plaintiffs intend to go with questioning Machelor and preclude it entirely (especially when neither she nor any of the defendants have timely moved to quash the subpoena or sought an order of protection), the deposition will go forward. Machelor and defendants may raise as objections any areas they believe venture into attorney-client or attorney work product privileges (among other potential, pertinent objections). As defendants and Machelor noted, this Court has only allowed production of certain e-mails and has not ruled upon other aspects of Machelor's testimony (including areas of her legal representation of her former client and areas that may be irrelevant to this action) or the scope of any privilege she or defendants may assert. Again, rather than rule in a vacuum either to compel

answers or to bar questions, the deposition will go forward, absent Court supervision. Plaintiffs ask questions, defendants and Machelor may raise objections and assert privileges (even instruct Machelor not to answer to preserve privileges, see Fed. R. Civ. P. 30(d)(1)), and make a record regarding the controverted questions and objections. If necessary, an aggrieved party may return to this Court, with a record, to determine the appropriate scope of the questioning and the assertion of the privilege or objection. Perhaps by that time the United States Court of Appeals for the Second Circuit may have ruled on the pending writ of mandamus and further inform this dispute (see Docket No. 149, County Defs. Atty. Affirm. Ex. A).

III.    How This Deposition Is to Be Conducted

As plaintiffs argued, if their motion is denied, they will depose Machelor to impasse, then move to compel[5] her to answer questions she declined to answer or she (or defendants) asserted privilege against answering, see Fed. R. Civ. P. 37(a)(3), 30(d)(3). Once the Court rules on that motion, and assuming that further questioning is allowed, plaintiffs would resume Machelor's deposition until another impasse is reached, then again move to compel, apparently ad infinitum. In other words, plaintiffs propose multiple motions to compel for this single deposition.

While an advance ruling may avoid this scenario (cf. at page 6, supra), no such ruling shall be rendered especially in the absence of a concrete question or objection and a record. This scenario of repeated motions gets closer to the situations in Condit, supra, 225 F.R.D. at 112, and where courts have appointed a "discovery master," where judicial supervision has been ordered.

---

[5]Or defendants or Machelor may move for a protective Order, see Fed. R. Civ. P. 26(c), 30(d)(4).

To minimize the possibility of repeated motion practice and appearances on this particular deposition, as stated above the total time for this deposition (with any judicial interventions) shall be **seven hours** of examination, see Fed. R. Civ. P. 30(d)(2). At the conclusion of the initial deposition session, the parties may make their respective motions to compel or for a protective order restricting questioning. Those motions will be considered on the moving papers only without oral argument unless the Court determines that such argument is necessary. Following the ruling on such motions and, if questioning is authorized, plaintiffs shall only have the balance of the seven hours not used by them in the earlier examination.

For example, the initial deposition takes four hours when a motion is filed. If a motion to compel is granted, plaintiffs now have only three hours to continue questioning. If plaintiffs then use those three hours but further issues arise during the continued deposition that would warrant another round of motion practice, plaintiffs' time to continue the deposition has expired and (barring a stipulation to extend the time to continue the deposition, cf. Fed. R. Civ. P. 30(d)(2)) another motion to compel would be denied because (despite the merits of the proposed question or objection) plaintiffs would not have additional time to complete that questioning. The seven total hours of examination, with intervening motion practice, is all that will be allocated to examine this witness. A fair examination of this witness can occur within seven hours, cf. Fed. R. Civ. P. 26(b)(2), 30(d)(2), and it is a sufficient amount of time to examine her on the limited issues surrounding the e-mails at issue. While all parties should keep track of the hours expended in this deposition, all counsel are reminded of Rule 30's admonition against impeding, delaying, or otherwise frustrating this deposition to exhaust the seven hours before plaintiffs have a chance to examine the witness, cf. id. R. 30(d)(3), (2).

The Court will not entertain telephone calls during the depositions and all motions shall be upon the papers only.

IV.     Contempt

Plaintiffs previously raised the specter of discovery misconduct during other depositions in this action (Docket No. 25, Pls. Atty. Affirm. ¶ 19; see Docket No. 120, Pls. Atty. Affirm. ¶ 14), one time moving for a protective order regarding the manner of the conduct of depositions (Docket No. 25). In granting in part and denying in part that portion of plaintiffs' earlier motion (Docket No. 52, Order at 21), the Court noted that it

> "may resort to various devices under the Rules and within its inherent supervisory authority to control the conduct of the parties and counsel in this case, for example micro management of discovery or sanctions under Rules 11, 16(f), 37, and 28 U.S.C. § 1927 for unreasonable and vexatious conduct by counsel. This case needs to get to its merits and not dwell on arguments for the sake of vexatious litigation. Continuing down the current path of this action will inevitably lead to further delays, added expense, and ultimately justice denied."

(id. at 35.) Now plaintiffs (and, to a degree, some defendants) wish to have the Court supervise this one particular deposition to rule upon the questioning or privileges.

As tempting as this situation may be for Court supervision and micro management, the Court would not interrupt its otherwise busy calendar or tie up a courtroom to supervise a single deposition which, by rule, could go on for up to seven hours, see Fed. R. Civ. P. 30(d)(2), unless the Court grants additional time to complete it, id. At this time, the Court declines to engage in the micro management of this one deposition. But if the record is developed and plaintiffs are compelled to seek redress to have their questions answered or the witness or defendants need established the scope of the attorney-client privilege in this action as to this witness, the Court will entertain that motion.

**CONCLUSION**

For the reasons stated above, plaintiffs' latest motion for Court supervision of their examination of Kristin Machelor (Docket No. 140) is **denied**. The County Defendants' request either to preclude Machelor's examination or to restrict its content (see Docket No. 149, County Defs. Atty. Affirm. ¶ 15) or Court supervision of this examination to preserve their privileges (see Docket No. 149, County Defs. Memo. at 8) is also **denied**. This deposition will be held on **Friday, November 24, 2006**, starting at **9:30 am**. Within five (5) business days of entry of this Order, the parties are to reach a mutually convenient site for this examination. This deposition shall be conducted it **without** Court supervision and shall **not** be conducted in the courtroom of this Court. But all parties reserve their respective rights during and at the conclusion of the examination to seek whatever relief they deem appropriate. Plaintiffs have a total of **seven hours** to conduct the deposition of this witness, inclusive of whatever continued examination subsequently authorized upon a motion to compel or denied motion for a protective Order.

So Ordered.

                                                  */s/ Hugh B. Scott*
                                                Honorable Hugh B. Scott
                                                United States Magistrate Judge

Buffalo, New York
October 12, 2006

Appendix, DirecTV v. Rowland, No. 04CV297, Docket No. 45, Order of May 27, 2005.