UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ADAM PRITCHARD, et al.,

                        Plaintiffs,

                    -vs-                                  04-CV-00534C(SC)

THE COUNTY OF ERIE, et al.,

                        Defendants.

---

APPEARANCES:       ELMER R. KEACH, III, ESQ., Amsterdam, New York
                              Attorney for Plaintiffs

                              FRANK T. GAGLIONE, ESQ., Amherst, New York
                              Attorney for County Defendants

                              ERIC T. BORON, ESQ., Buffalo, New York
                              Attorney for Defendant H. McCarthy Gipson

In accordance with the January 3, 2007, decision of the United States Court of Appeals for the Second Circuit, *see In re County of Erie*, 473 F.3d 413 (2d Cir. 2007), this court directed briefing and argument to determine whether a waiver of the attorney-client privilege had occurred with respect to e-mail communications between an Assistant Erie County Attorney and employees of the Erie County Sheriff's Department. Oral argument was heard on May 14, 2007. The following is the court's ruling on this issue.

## **BACKGROUND**

This action was commenced in July 2004 by plaintiffs Adam Pritchard, Edward Robinson, and Julenne Tucker seeking relief pursuant to 42 U.S.C. § 1983, individually and on behalf of a class of others similarly situated. Plaintiffs allege that since at least 2001,

the Sheriff's Department had implemented a policy to subject every detainee who entered the Erie County Holding Center ("ECHC") or the Erie County Correctional Facility ("ECCF") to an invasive strip search without regard to individualized suspicion or the severity of the offense alleged, in violation of the Fourth Amendment.  Named as defendants are the County of Erie; Patrick Gallivan, former Erie County Sheriff; Timothy Howard, former Undersheriff (now Sheriff); Donald Livingston, Superintendent of the ECCF; Robert Huggins, former Deputy Superintendent; and H. McCarthy Gipson, former Superintendent of the ECHC.

The County, along with individual defendants Gallivan, Howard, Livingston, and Huggins (referred to herein as the "County Defendants") filed an answer, asserting generally that "no 'policy' of conducting a 'strip search' of each individual upon entry of its facilities, regardless of particular circumstances, exists or has been followed during any time period alleged in the Complaint" (Item 3, ¶ 6).  The County Defendants also asserted several defenses, including the affirmative defense of qualified immunity (*id*. at ¶ 22). Defendant Gipson filed a separate answer, asserting an identical denial of the existence of a policy to conduct strip searches without regard to individualized suspicion or the offense alleged (*see* Item 4, ¶ 7) and an identical qualified immunity defense (*id*. at ¶ 39).

In response to plaintiffs' discovery demands, the County submitted a privilege log identifying many (approximately 70) e-mail communications between the County Attorney's office (primarily involving former Assistant County Attorney Kristin Baudo Machelor) and Sheriff's Department officials as to which the County claimed protection from disclosure by the attorney-client privilege and the attorney work product doctrine (*see* Item 25, Exs. M, N).  When plaintiffs moved to compel production of the documents listed in the privilege

log (*see id.*, Attachment 1), the County submitted the disputed documents to Magistrate Judge Hugh B. Scott, to whom the matter had been referred for supervision of pretrial matters, for *in camera* inspection.

Upon review of the documents, Judge Scott issued an order dated January 4, 2006, in which he sustained the claim of privilege with respect to many of the items listed in the log as seeking or providing legal advice, or as attorney work product (*see* Item 78). However, Judge Scott ordered production of ten of the withheld e-mails (or "e-mail chains"), finding that the matters discussed in those communications went beyond the rendering of legal advice "into the realm of policy making and administration" and, as a result, the attorney-client privilege did not apply (*id*. at p. 4).

After considering the County's objections to this order, this court independently reviewed the disputed e-mails *in camera* and, applying the highly deferential standard of review provided in Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A), found "no clear error of fact, misapplication of the law, or abuse of discretion that would warrant setting aside or modifying the magistrate judge's January 4, 2006 order in any way" (Item 106, p. 4). The court directed counsel to make arrangements for production of the disputed documents in accordance with Judge Scott's ruling.

Defendants then sought mandamus review by the Second Circuit, and in the meantime moved to stay the application of the order directing production of the disputed e-mails pending appellate court review. Both this court and a motions panel of the Second Circuit denied defendants' request for a stay pending appeal, resulting in the release of the ten disputed e-mail communications to the plaintiffs.

The Second Circuit subsequently took up the mandamus petition and granted the writ, finding that the petition raised the following issue of first impression: "whether the attorney-client privilege protects communications that pass between a government lawyer having no policymaking authority and a public official, where those communications assess the legality of a policy and propose alternative policies in that light." *In re County of Erie*, 473 F.3d at 417.  The circuit court answered this question in the affirmative, disagreeing with the magistrate judge's conclusion that the information discussed in the disputed e-mails went beyond legal analysis into the policymaking realm.  The circuit court determined instead that the e-mails, "which (variously) reviewed the law concerning strip searches of detainees, assessed the County's current search policy, recommended alternative policies, and monitored the implementation of these policy changes," *id.* at 416, were sent "for the predominant purpose of soliciting or rendering legal advice."  *Id.* at 422.

> They convey to the public officials responsible for formulating, implementing and monitoring Erie County's corrections policies, a lawyer's assessment of Fourth Amendment requirements, and provide guidance in crafting and implementing alternative policies for compliance.  This advice–particularly when viewed in the context in which it was solicited and rendered–does not constitute "general policy or political advice" unprotected by the privilege.

*Id*. at 422-23.  Accordingly, the circuit court vacated this court's order affirming Judge Scott's ruling, and remanded the matter "to determine whether the distribution of some of the disputed e-mail communications to others within the Erie County Sheriff's Department constituted a waiver of the attorney-client privilege."  *Id.* at 423 (citing *In re Horowitz*, 482 F.2d 72, 81-82 (2d Cir. 1973); *United States v. DeFonte*, 441 F.3d 92, 94-95 (2d Cir. 2006) (*per curiam*).  The circuit court also directed this court to enter an interim order protecting the confidentiality of the disputed e-mails pending determination of the waiver issue.

On January 8, 2007, a telephone status conference was held with the court, during which counsel were directed to simultaneously submit memoranda of law outlining their preliminary positions on the waiver issue. That same day, in accordance with the Second Circuit's directive on remand, this court issued a written order aimed at protecting the confidentiality of the disputed communications pending determination of the waiver issue. The court also rescinded the referral of pretrial matters to Judge Scott (*see* Item 162).

Shortly after receiving the parties' simultaneous submissions on waiver, the court received a letter from plaintiff's counsel requesting leave to file a motion to compel the County to produce additional e-mail messages which have been identified during deposition testimony but have not been disclosed or listed in any privilege log. In an order dated February 22, 2007 (Item 183), the court denied this request without prejudice to renew pending resolution of the waiver issue. The court also directed supplemental briefing on this issue and scheduled oral argument.[1]

---

[1] In the February 22, 2007 order, the court identified the issues to be addressed in the supplemental briefing as follows:

    A.    Whether the defendants have preserved the confidentiality of the privileged e-mails by limiting their dissemination only to employees with a need to know the content of the communication in order to perform their jobs effectively or to make informed decisions concerning, or affected by, the subject matter of the communication.

    B.    Whether the circumstances presented in this case warrant application of the "at issue" waiver doctrine–*i.e.*, whether the defendants' assertion of facts in defense of the claims against them in this case has resulted in the involuntary forfeiture of protection from disclosure of matters pertinent to the defenses asserted.

(Item 183).

At oral argument on May 14, the court limited discussion to the waiver issue as framed by the Second Circuit in its remand order–*i.e.*, whether the distribution of disputed e-mail communications to others within the Sheriff's Department resulted in waiver. Having considered the matters presented in the briefs and during oral argument in light of the circuit court's specific directive on remand, the court will limit its ruling accordingly.

Upon consideration of the matters addressed by the parties in their written and oral submissions, and for the reasons discussed below, the court finds that defendants have adequately demonstrated that they have protected the confidentiality of the ten disputed e-mail communications at issue by limiting their distribution to Sheriff's Department employees who had a need to know the information contained therein, and that no waiver of the attorney-client privilege has occurred with respect to those particular communications.

## DISCUSSION

It is well recognized that while dissemination of privileged information to third parties generally waives the attorney-client privilege, distribution within a corporation of legal advice received from corporate counsel does not, by itself, necessarily result in waiver. *See Strougo v. BEA Associates*, 199 F.R.D. 515, 519-20 (S.D.N.Y. 2001) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 391-92 (1981)).[2] "This follows from the recognition that since the decision-making power of the corporate client may be diffused among several employees, the dissemination of confidential communications to such persons does not defeat the privilege." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995).

In a case recently decided within this district, Judge David Larimer outlined the appropriate inquiry to determine whether the dissemination of privileged communications

---

[2] As the Second Circuit noted in its January 3, 2007 decision, "[a]t least in civil litigation between a government agency and private litigants, the government's claim to the protections of the attorney-client privilege is on a par with the claim of an individual or a corporate entity." *In re County of Erie*, 473 F.3d at 419.

to corporate (or in this case, government) employees has waived the privilege: did the recipient "need to know" the content of the communication in order to perform his or her job effectively or to make informed decisions concerning, or affected by, the subject matter of the communication? *Scholtisek v. Eldre Corp.*, 441 F. Supp. 2d 459, 464 (W.D.N.Y. 2006) (citations omitted). As explained in *Scholtisek*:

> The "need to know" must be analyzed from two perspectives: (1) the role in the corporation of the employee or agent who receives the communication; and (2) the nature of the communication, that is, whether it necessarily incorporates legal advice. To the extent that the recipient of the information is a policymaker generally or is responsible for the specific subject matter at issue in a way that depends upon legal advice, then the communication is more likely privileged.

*Id. (*quoting *Verschoth v. Time Warner Inc.*, 2001 WL 286763, at *2) (S.D.N.Y. Mar. 22, 2001)). Judge Larimer also recognized the prevailing view in the Second Circuit that the party asserting the privilege has the burden to show that it preserved the confidentiality of the communication by limiting its dissemination only to employees with a need to know the nature of the information contained in the communication. *Id*. (citing cases).

Upon review of the parties' submissions on file, including the affirmations of counsel, the declarations of the County employees who received or were copied on the privileged e-mails (*see* Item 175, Attachments 2-15), and the communications themselves, the court finds that defendants have sustained their burden in this regard.

With respect to the first prong of the "need to know" waiver analysis, it is clear to the court that each of the recipients listed on the printouts of the disputed e-mails was a Sheriff's Department official whose duties required knowledge of the specific subject matter of the communications to make informed policy decisions, or to effectively perform their jobs, in a way that depended upon the legal advice rendered by the County Attorney's

Office. Specifically, the following individuals either authored, directly received, or were copied on the majority of the privileged e-mails: Sheriff Gallivan, Undersheriff Howard, Superintendent Livingston, Superintendent Gipson, and Chief Brian Doyle. It is beyond dispute that at the time of the events complained of, these individuals were senior officers responsible for the overall administration of the Sheriff's Department's Jail Management Division, and as such needed to know the legal basis for the County Attorney's recommendation that the Department change its policy for authorizing strip searches of inmates or detainees.

Much of the discussion pertaining to the "waiver by dissemination" analysis has centered on one particular e-mail communication–identified in the privilege log as Bates No. EC-C-00218-19–which was distributed to the following lower-ranking officers: Jeffrey Hartman, Glen Isch, Paul Glinski, Keith Kibler, Kevin Lynch, Frank Odee, John Rosetti, Thomas Vaughan, David Webster, and Howard Webster. These individuals have submitted declarations (*see* Item 175, Ex. A) indicating that at the time of the events complained of, each held the rank of Sergeant or higher. Plaintiffs contend that while "line sergeants" and other lower-ranking members of the Sheriff's Department may have needed to know what the Jail Management Division's strip search policy was, they did not need to know the legal basis for the County Attorney's recommendation that the policy be changed. *Cf. Verschoth*, 2001 WL 286763, at *2 ("[T]he autoworker on the assembly line has no need to be advised of the legal basis for a [change] in production even though it affects the worker's routine and thus is within his or her general area of responsibility. The worker, of course, must be told what new production procedure to implement, but has no need to know the legal background.").

However, as defendants point out, Judge Scott has previously ruled in this case (in the context of a discovery dispute as to whether plaintiffs' attorneys could have *ex parte* contacts with Sheriff's Department employees) that, "[o]fficers at the rank of sergeant or lieutenant and above . . . have administrative and management functions that could be policymaking imputed to the County or Sheriff (such as directing certain actions be undertaken that could be construed as County policy)" (Item 52, p. 32) (citing *Niesig v. Team I*, 76 N.Y.2d 363, 559 N.Y.S.2d 493 (1990) (adopting "alter ego" test to determine whether a corporate employee is a "party" entitled to protection from contact by opposing counsel under attorney disciplinary rule DR 7-104)). The common-sense implication of this determination is that, at least for the purposes of this litigation, officers holding the rank of Sergeant and above should be considered administrative and management employees subject to the attorney-client relationship with the County Attorney's office. Giving Judge Scott's ruling its practical application, and in the absence of any showing by plaintiffs to convince the court otherwise, the court finds that these officers needed to know the substance of the legal advice contained in Bates No. EC-C-00218-19 in order to make the informed decisions necessary to effectively perform their job duties–including implementing the policy for authorizing strip searches.

The cover memorandum on one of the privileged e-mail communications (EC-C-00161) indicates that a copy of that document was sent to Sue Darlak, identified by defendants as the confidential administrative assistant to the Sheriff. It is well recognized that this type of "disclosure" does not constitute waiver of the privilege. *See, e.g., In re Adelphia Communications Corp.*, 2005 WL 425498, at *8 (S.D.N.Y. February 16, 2005) (receipt of privileged e-mail by secretary for purpose of passing it along to intended

recipient did not waive privilege); *Abbott Laboratories v. Airco, Inc.*, 1985 WL 3596, at *4 (N.D.Ill. November 4, 1985) ("A recognized exception to the rule that the communication must be directly between the client and attorney is for ministerial agents of the attorney (such as clerks, secretaries and stenographers) or of the client who facilitate transmission of the communication.").

The second prong of the "need to know" waiver analysis, *i.e.*, whether the communication necessarily incorporates legal advice, has already been adequately addressed by the Second Circuit in its determination that the attorney-client privilege pertains to the ten disputed communications. In taking the unusual step of granting interlocutory mandamus relief, the circuit court carefully examined the facts of this prolonged discovery dispute in light of the competing policies underlying attorney-client privilege protection for communications between government attorneys and public officials in the context of civil suits between private litigants and government agencies, expressly finding "that each of the ten disputed e-mails was sent for the predominant purpose of soliciting or rendering legal advice." *In re County of Erie*, 473 F.3d at 422.

Based on this analysis, the court concludes that defendants have satisfied their burden of demonstrating with sufficient "factual specificity," *In re PEPCO Employment Litigation*, 1992 WL 310781, at *3 (D.D.C. October 2, 1992), that dissemination of any of the ten e-mail communications ruled upon by the Second Circuit was limited to Sheriff's Department employees who needed to know the content of the communication in order to effectively perform their jobs or to make informed policy decisions concerning the authorization of strip searches of inmates or detainees at the ECHC and ECCF. In the absence of any factual showing by plaintiffs to suggest a contrary result, the court finds that

there has been no waiver of the attorney-client privilege pertaining to these particular ten e-mail communications.

## **CONCLUSION**

For all of the reasons stated above, and in accordance with the directives of the Second Circuit's order of remand in *In re County of Erie*, this court finds that the distribution of some of the disputed e-mail communications to other employees of the Sheriff's Department did not constitute a waiver of the attorney-client privilege.  Plaintiffs' motion to compel production of these documents (*see* Item 25) is denied.

A telephone conference with the court is scheduled for Wednesday, June 27, 2007, at 10 a.m. to discuss an appropriate schedule for further proceedings in this case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: June    11    , 2007
p:\opinions\04-534.june507