UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ADAM PRITCHARD, et al.,

                            Plaintiffs,

              -vs-                                    04-CV-00534C

THE COUNTY OF ERIE, et al.,

                            Defendants.

_____

         On June 12, 2007, this court issued an order denying plaintiffs' motion to compel

the production of privileged e-mail communications between an Assistant Erie County

Attorney and employees of the Erie County Sheriff's Department, finding that the privilege

had not been waived (Item 199).  Plaintiffs have moved for reconsideration of this ruling,

pursuant to Rule 60 of the Federal Rules of Civil Procedure (*see* Item 200).  Oral argument

was heard on October 30, 2007.

         For the reasons that follow, plaintiffs' motion is granted.


                                    **BACKGROUND**

         The factual background of the protracted discovery dispute at hand is set forth at

some length in the court's previous orders, and will not be repeated here.  Suffice it to state

that, upon receiving notice of the decision in *In re County of Erie*, 473 F.3d 413 (2d Cir.

2007), this court directed briefing and argument to determine the issue left undecided by

the Second Circuit in its remand order--specifically, "whether the distribution of some of the

disputed e-mail communications to others within the Erie County Sheriff's Department

constituted a waiver of the attorney-client privilege." *Id.* at 423. After receiving and reviewing the parties' initial submissions outlining their positions on waiver, this court issued a subsequent order directing the parties to submit supplemental briefs focused on the following issues:

> A.  Whether the defendants have preserved the confidentiality of the ten privileged e-mails by limiting their dissemination only to employees with a need to know the content of the communication in order to perform their jobs effectively or to make informed decisions concerning, or affected by, the subject matter of the communication. *Cf. Scholtisek v. Eldre Corp.*, 441 F. Supp. 2d 459, 463-65 (W.D.N.Y. 2006).
>
> B.  Whether the circumstances presented in this case warrant application of the "at issue" waiver doctrine–*i.e.*, whether the defendants' assertion of facts in defense of the claims against them in this case has resulted in the involuntary forfeiture of protection from disclosure of matters pertinent to the defenses asserted. *Cf. John Doe Co. v. United States*, 350 F.3d 299, [303] (2d Cir. 2003).

(Item 183, p. 2).

At oral argument on May 14, 2007, the court limited the discussion to the "waiver by dissemination" issue, and did not hear argument on plaintiffs' position that defendants waived the attorney client privilege by placing the facts discussed in the privileged communications at issue in the case. The court noted this limitation in its June 12, 2007 order, and also noted its intent to limit its ruling accordingly (*see* Item 199, p. 5 n. 1).

Plaintiffs now ask the court to reconsider this ruling, and urge the court to take up the "at issue" waiver argument.

## **DISCUSSION**

1.	**Rule 60(b)**

The relevant portions of Rule 60(b) provide that "upon such terms as are just, the court may relieve a party . . . from a final judgment [or] order . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment."  Fed. R. Civ. P. 60(b); *see Mendell In Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990).  Motions under Rule 60(b) are addressed to the sound discretion of the district court and are generally granted "only upon a showing of exceptional circumstances."  *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986), *quoted in Scherer v. City of New York*, 2007 WL 2710100, at *4 (S.D.N.Y. September 7, 2007).

Under Rule 60(b), reconsideration of a prior order is proper where "the moving party can point to controlling decisions or data that the court overlooked--matters in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also New York v. Solvent Chem. Co.*, 235 F. Supp. 2d 238, 239-40 (W.D.N.Y. 2002) (quoting *Schrader*, 70 F.3d at 257).  "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or to prevent manifest injustice."  *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000).  "[A] motion for reconsideration is not to be used as a vehicle for wasteful repetition of arguments already briefed, considered, and decided."  *Solvent Chem. Co.*, 235 F. Supp. 2d at 239 (citing *Torf*

-3-

*v. Metromedia Paging Services, Inc.*, 1996 WL 118559, at *4 (E.D.N.Y. March 5, 1996);

*Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990)).

As the following discussion demonstrates, the court's limitation of the issues raised

by plaintiffs' motion to compel overlooked pertinent facts and case law which, when

considered in light of the circumstances of this case, justifies reconsideration of the June

12, 2007 ruling in order to properly address the "at issue" waiver question.


**2.      "At Issue" Waiver**

Plaintiffs contend that defendants have waived the attorney-client privilege attached

to the disputed e-mails by asserting as their defense critical facts contained in those

communications, and then relying on the privilege to deny plaintiffs access to those facts.

Waiver of this type is often referred to as "at issue" or "implied" waiver.  As explained by

the Second Circuit:

> It is well established doctrine that in certain circumstances a party's
> assertion of factual claims can, out of considerations of fairness to the party's
> adversary, result in the involuntary forfeiture of privileges for matters
> pertinent to the claims asserted.  The loss of the privilege in these
> circumstances is sometimes described as implied waiver, sometimes as "at
> issue" waiver because it results from the party having placed a contention at
> issue . . . .
>
> Forfeiture of this nature is justified by considerations of fairness to the
> adversary.  In some circumstances, courts have ruled that it would be unfair
> for a party asserting contentions to an adjudicating authority to then rely on
> its privileges to deprive its adversary of access to material that might
> disprove or undermine the party's contentions.

*John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003)  (internal citations and

quotations omitted).

The determination of whether an "at issue" waiver has occurred is "a vexing exercise for a court." *Trudeau v. New York State Consumer Protection Bd.*, 237 F.R.D. 325, 340 (N.D.N.Y. 2006).   In attempting to facilitate this troublesome analysis, courts within the Second Circuit have approached the inquiry in various ways.   Most commonly, the courts have applied the test first enunciated in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash. 1975), which asks whether: (1) the assertion of the privilege was a result of some affirmative act, such as filing suit or pleading in response to a claim; (2) through the affirmative act, the asserting party has put the protected information at issue by making it relevant to the case; and (3) the application of the privilege would have denied the opposing party access to information vital to the defense.   *Id.* at 581; *see also United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.), *cert. denied*, 502 U.S. 813 (1991) (defendant's invocation of "good-faith" defense to securities fraud charge placed knowledge of the law in issue, making conversations with counsel regarding legality of his conduct directly relevant in determining element of intent); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 1995 WL 598971, at *3 (S.D.N.Y. October 11, 1995) (applying *Hearn* factors to find waiver based on assertion of "reliance on advice of counsel" defense to claims of fraud and conversion arising out of financing of oil trading program).   As the court in *Bank Brussels Lambert* observed:

> Cases where courts have found a waiver of privilege based on the "at issue" doctrine exhibit several common factors: (1) the very subject of privileged communications [is] critically relevant to the issue to be litigated, (2) there [is] a good faith basis for believing such essential privileged communications exist[ ], and (3) there [is] no other source of direct proof on the issue.

*Bank Brussels Lambert*, 1995 WL 598971, at *5 (quoting *Standard Chartered Bank PLC v. Ayala Int'l Holdings*, 111 F.R.D. 76, 83 (S.D.N.Y. 1986)) (internal quotation marks omitted).

The Second Circuit further advised in *John Doe Co.* that, "because the [forfeiture] doctrine is rooted in fairness we have also cautioned against broad generalizations, stressing that '[w]hether fairness requires disclosure . . . is best decided on a case by case basis, and depends primarily on the specific context in which the privilege is asserted.'" *John Doe Co.*, 350 F.3d at 302 (quoting *In re Grand Jury Proceedings*, 219 F.3d 175, 183 (2d Cir. 2000)).

> The unfairness and distortion of process [justifying a finding of waiver] has been found when one party advanced a contention to a decisionmaker, such as a court or jury, while denying its adversary access to privileged materials which might have been used to rebut the privilege holder's contention. The crucial issue is not merely some connection to a judicial process but rather the type of unfairness that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion.

*Id.* at 306.

The *Hearn* opinion itself is instructive. *Hearn* involved a prison inmate's claim, pursuant to 42 U.S.C. § 1983, that his confinement in the mental health unit of the Washington State Penitentiary violated his constitutional rights under the due process clause and the Eighth Amendment. The defendant prison officials raised the affirmative defense of qualified immunity, claiming good faith reliance on the legality of their conduct. To refute this defense, the plaintiff sought discovery of legal advice rendered by the state attorney general relating to plaintiff's confinement. The court found that this set of

circumstances placed directly in issue the defendants' communications with their attorneys that related to, among other things, the prison officials' knowledge of whether their conduct violated the plaintiff's constitutional rights, and that the need for this information outweighed the policy behind the attorney-client privilege. *Hearn*, 68 F.R.D. at 580-81. According to the court:

> [T]he content of defendant's communications with their attorney is inextricably merged with the elements of plaintiff's case and defendants' affirmative defense. These communications are not incidental to the case; they inhere in the controversy itself, and to deny access to them would preclude the court from a fair and just determination of the issues. To allow assertion of the privilege in this manner would pervert its essential purpose and transform it into a potential tool for concealment of unconstitutional conduct behind a veil of confidentiality. Under these circumstances, the benefit to be gained from disclosure far outweighs the resulting injury to the attorney-client relationship. The privilege should not apply.

*Id.* at 582.

While recognizing the resistance on the part of some courts to give *Hearn* an expansive reading, *see, e.g.*, *Allen v. West Point-Pepperell Inc.*, 848 F. Supp. 423, 429 (S.D.N.Y. 1994); *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 413-15 (D.Del. 1992), this court nonetheless finds the reasoning in *Hearn* compelling in light of the very similar circumstances presented. Like the plaintiff in *Hearn*, the plaintiffs in this case challenge the constitutionality of prison officials' conduct and, like the defendants in *Hearn*, the prison officials have responded by pleading qualified immunity, arguing that their conduct was appropriate under the law.

Somewhat more specifically, plaintiffs claim in this case that the Sheriff's Department's policy for searching inmates and detainees authorized invasive strip searches without regard to individualized suspicion or the severity of the crime charged.

The prison officials respond that there was no such policy in place, or that the policy that was in place authorized searches of individual detainees in accordance with constitutional requirements.  Defendants also claim qualified immunity from suit based on "an objectively reasonable belief that their actions were lawful and not in violation of any of plaintiff's clearly established constitutional rights" (Item 3, ¶ 22; Item 4, ¶ 39).

When plaintiffs sought discovery related to the County's policy, the prison officials asserted privilege with respect to communications they had with counsel, which took place during the relevant time period, about the legality of the policy.  This affirmative conduct on the part of prison officials--*i.e.*, pleading conduct in conformity with the law, and then asserting privilege to protect from disclosure facts that might disprove this contention--has placed the advice rendered by defendants' counsel about the legality of the strip search policy directly in issue in the case.  As stated in *Hearn*:

> [D]efendants invoked the privilege in furtherance of an affirmative defense they asserted for their own benefit; through this affirmative act they placed the protected information at issue, for the legal advice they received is germane to the qualified immunity defense they raised; and one result of asserting the privilege has been to deprive plaintiff of information necessary to 'defend' against defendants' affirmative defense, for the protected information is also germane to plaintiff's burden of proving malice or unreasonable disregard of his clearly established constitutional rights.

*Hearn*, 68 F.R.D. at 581.

Here, defendants have invoked the privilege in furtherance of their defense that the County's policy for conducting strip searches on ECHC detainees or ECCF inmates was at all times implemented in accordance with constitutional requirements.  The advice they received from counsel in this regard is germane not only to this defense, but also to plaintiffs' burden of proving that the policy (or prison officials' implementation of the policy)

violated the Fourth Amendment.  *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner.  The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.").

This conclusion is supported by the deposition testimony of defendants Livingston and Gipson.  For example, at his December 5, 2005 deposition, defendant Livingston was asked by plaintiffs' counsel about the circumstances precipitating the drafting of a memo dated August 27, 2003, which was produced during document discovery.  The memo was prepared by Livingston and signed by Gipson.  It advises "Supervisors, Intake and Booking Deputies and Officers" in the Jail Management Division "that routine or universal strip searches of newly admitted inmates has been found to be unconstitutional.  Therefore: effective immediately, no routine or universal strip searches are to be administered to any newly admitted inmate." (Item 177, Ex. G).  Livingston explained that he and Gipson "were having continued discussions with the County Attorney's Office regarding the changes in court cases and how they impacted--how those changes impacted what we were doing at the holding center." (*Id.*, Ex. H, at 45).  Gipson testified at his April 6, 2006 deposition that "Krist[i]n Machelor was in the process of being involved in the rewrite of the strip search policy.  And, she was doing some things, and we were looking at it from our end." (*Id.*, Ex. J, at 29-30).  Read as a whole, this testimony clearly indicates defendants' reliance on privileged communications to support the contention that the strip search policy implemented at the ECHC and the ECCF was lawful.

Considering all of these circumstances, the conclusion is inescapable that the factual content of the disputed e-mail communications has become inextricably merged with defendants' position that the County's strip search policy was lawful or was implemented under a good faith belief as to its legality, as well as with the elements of plaintiffs' § 1983 claim that the policy as applied violated their constitutional rights.  This information is critically relevant to the controversy itself, and there has been no showing to indicate the existence of any other source of direct proof on the issue.  To deny plaintiffs access to the information would undermine the essential purpose of the privilege by "transform[ing] it into a potential tool for concealment of unconstitutional conduct behind a veil of confidentiality."  *Hearn*, 68 F.R.D. at 582.  As such, the benefit to be gained from disclosure of the communications far outweighs any resulting injury to the attorney-client relationship.

Based on this analysis, the court finds that the defendants have waived the attorney-client privilege with respect to the disputed e-mails by placing the information in those communications at issue in the litigation.  The court also finds that, because this protracted dispute has focused on the discoverability of these particular documents, the scope of the waiver should be limited accordingly.  *See McGrath v. Nassau County Health Care Corp.*, 204 F.R.D. 240, 245 (E.D.N.Y. 2001) (having determined "at issue" waiver occurred, court must determine scope of waiver) (quoting *United States v. Doe (In re Grand Jury Proceedings)*, 219 F.3d 175, 190 (2d Cir. 2000)).

## **CONCLUSION**

For all of the reasons stated above, plaintiffs' motion for reconsideration (Item 200) is granted, and the court finds that the attorney-client privilege has been waived with respect to the ten particular e-mail communications at issue. These documents shall be produced to plaintiffs' counsel forthwith.

As discussed during oral argument, plaintiffs seek court approval of their request for the deposition of a designated County employee, noticed pursuant to Fed. R. Civ. P. 30(b)(6), to provide testimony with respect to plaintiffs' demand for production of additional e-mail communications. On or before November 30, 2007, defense counsel shall provide the court and plaintiffs' counsel with a list of documents produced or withheld in response to this demand, along with an appropriate privilege log and any other materials deemed necessary to assist the court in ruling on the deposition application. Plaintiffs' responding affidavit shall be filed on or before December 7, 2007. Upon review of these submissions, the court will issue an order addressing plaintiffs' deposition request and setting a schedule for further proceedings in the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   10/31          , 2007
p:\pending\2004\04-534.oct30.07

-11-