UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ADAM PRITCHARD, et al.,

                  Plaintiffs,

                                            DECISION AND ORDER
                -vs-                                 04-CV-534-A

THE COUNTY OF ERIE, et al.,

                  Defendants.

---

In accordance with this Court's order dated July 10, 2009, plaintiffs filed a renewed motion for class certification (Item 235). Defendants responded, and filed a cross-motion (Item 247) to strike certain matters from plaintiffs' certification motion papers. The Court heard oral argument of these motions on March 24, 2010. For the reasons stated, plaintiffs' motion for class certification is granted, and defendants' cross-motion to strike is granted.

**BACKGROUND**

This action was filed in July 2004 by proposed representative plaintiffs Adam Pritchard and Edward Robinson[1] seeking injunctive relief, money damages and attorneys' fees pursuant to 42 U.S.C. § 1983, individually and on behalf of a putative class of

---

[1] Julenne Tucker was also named as a class representative. However, plaintiff's counsel has moved to discontinue the claims of plaintiff Tucker and to withdraw as Mr. Tucker's counsel. Because the certification motion seeks representative status on behalf of only Adam Pritchard and Edward Robinson, and in the absence of any showing with regard to Mr. Tucker's adequacy as a class representative or any objection to this motion by defendants, the motion to discontinue Mr. Tucker as class representative is now granted, as is counsel's request to withdraw from his representation of Mr. Tucker on an individual basis.

post-arraignment pre-trial detainees charged with misdemeanors or other minor crimes who entered the Erie County Holding Center in downtown Buffalo (ECHC) or the Erie County Correctional Facility in Alden (ECCF) between July 22, 2001 and May 1, 2004. Plaintiffs allege that, beginning in 2001, the Sheriff's Department implemented a policy to conduct an invasive strip search of every such detainee at the time they changed from street clothes to a prison uniform (a procedure called "change-out"), without regard for the severity of the offense alleged and without individualized reasonable suspicion of possession of weapons or contraband, in violation of the Fourth Amendment. Named as defendants are the County of Erie; Patrick Gallivan, former Erie County Sheriff; Timothy Howard, former Undersheriff; Donald Livingston, Superintendent of the ECCF; Robert Huggins, former Deputy Superintendent of the ECCF; and H. McCarthy Gipson, former Superintendent of the ECHC.

The County, along with individual defendants Gallivan, Howard, Livingston, and Huggins (referred to collectively as the "County defendants"), filed an answer generally denying the existence of a policy to conduct strip searches without regard to individualized suspicion or the offense alleged, and asserting several affirmative defenses. Defendant Gipson filed a separate answer with the same or substantially similar denials and defenses.

By their renewed motion, plaintiffs seek certification of the following class:

> All persons who have been placed into the custody of the Erie County Correctional Facility and/or the Erie County Holding Center after being charged with misdemeanors, violations, violations of probation or parole, traffic infractions, civil commitments or other minor crimes and were strip searched upon their entry into the Erie County Correctional Facility and/or the Erie County Holding Center pursuant to the policy, custom and practice of the Erie County Sheriff's Department and the County of Erie. The class period commences on July 22, 2001 and extends until May 1, 2004. Specifically excluded from the class are Defendants and any and all of their

respective affiliates, legal representatives, heirs, successors, employees or assignees.

(Item 239, pp. 1-2). Plaintiffs request that the Court certify this action as a money damages class action under Rule 23(b)(3). In the alternative, plaintiffs seek partial certification under Rule 23(c)(4).

Defendants respond that a class cannot be certified in this case because plaintiffs have failed to come forward with proof that the County's facially valid search policy was unconstitutional. Defendants also argue that the proposed representative plaintiffs are inadequate and atypical of the proposed class because Mr. Pritchard (the only proposed class representative searched at the ECCF) was a parole violator, which carries a different legal status than an arrestee on a misdemeanor or other minor crime, and that Mr. Robinson (the only proposed representative searched at the ECHC) was searched outside the class period (*see* Item 245).[2]

The County defendants have also filed a cross-motion (Item 247) seeking an order striking certain exhibits and unsupported allegations from the plaintiffs' motion papers. Each motion is discussed in turn.

---

[2]Defendant Gipson adopts the factual statements, arguments, and other matters put forth by the County defendants (*see* Item 250). It is noted that defendants did not seek Court approval prior to filing their 40-page responding memorandum of law, well in excess of the 25-page limit of Local Rule 7.1(f).

# DISCUSSION

I. **Motion for Class Certification**

A. *Applicable Law*

The certification of class actions is governed by Rule 23, which provides in pertinent part:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> > (1) the class is so numerous that joinder of all members is impracticable;
> >
> > (2) there are questions of law or fact common to the class;
> >
> > (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> >
> > (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
>
> > * * *
>
> > (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
> >
> > (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently 5 adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.
>
> (c) Certification Order; Notice to Class Members; Judgment; Issues Classes; Subclasses.
>
> * * *
>
> (4) Particular Issues. When appropriate, an action may be brought or maintained as a class action with respect to particular issues.

Fed. R. Civ. P. 23.

Most courts that have addressed class certification in the context of prison strip searches have proceeded under Rule 23(b)(3). *See, e.g.*, In re Nassau County Strip Search Cases, 461 F.3d 219, 225 (2d Cir. 2006); Williams v. County of Niagara, 2008 WL 4501918 (Sept. 29, 2008); Mitchell v. County of Clinton, 2007 WL 1988716 (N.D.N.Y. July 5, 2007).

To achieve class certification pursuant to Rule 23(b)(3), plaintiffs must (1) satisfy the four requirements of Rule 23(a) (numerosity, typicality, commonality, and adequacy of representation); (2) demonstrate that common "questions of law or fact" predominate over "any questions affecting only individual members;" and (3) establish that the class action mechanism is "superior to other available methods for the fair and efficient adjudication of

the controversy." In re Nassau County Strip Search Cases, 461 F.3d at 225 (internal quotations and citation omitted) (reversing district court's denial of class certification motion in jail strip search case).

## B. *Numerosity*

The numerosity requirement of Rule 23(a)(1) is satisfied by a showing that, due to the number of potential class members, joinder of individual members as named plaintiffs would be impracticable. See Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). In this case, the numerosity of plaintiff's proposed class is supported by defendants' production of booking records indicating that approximately 45,000 individuals were admitted to the ECHC or ECCF during the class period from July 2001 to May 2004. Plaintiffs' counsel reasonably estimates that the class size is, at a minimum 30,000 individuals. Accepting as true the allegation that these detainees were all subjected to the strip searches during the change-out procedure upon their admission, this class size is more than adequate to meet the numerosity requirement. See, e.g., Mitchell, 2007 WL 1988716, at *2 (numerosity established in strip search class action where class would number "well into the hundreds, very likely over a thousand"); Williams v. County of Niagara, 2008 WL 4501918, at *3 (W.D.N.Y. September 29, 2008) (numerosity established in strip search class action where plaintiffs estimated class size to be over 8,000 individuals).

### C. *Commonality and Typicality*

Under Rule 23(a)(2), plaintiffs must show commonality, that is, that the action raises "questions of law or fact common to the class." Under 23(a)(3), plaintiffs must also show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." As explained by the Second Circuit, these requirements "tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997) (citing General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 n. 13 (1982)). The commonality requirement is met if plaintiffs' claims share a common question of law or of fact. Id.; see also In re Agent Orange Prod. Liab. Litig., 818 F.2d 145, 166-67 (2d Cir. 1987). The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992).

In this case, there is ample proof in the documents and testimony presented to the Court to support the claim that a significant number of detainees admitted to the ECHC and ECCF during the class period were subjected to a strip search at change-out. However, the proof also indicates that the two facilities had different procedures. As to ECCF, plaintiff's allege that a written policy existed directing strip searches for all detainees, including those charges with minor crimes. In contrast, plaintiff's allege that ECHC had a uniform practice (as opposed to a written policy) of conducting strip searches for all detainees, including those charged with minor crimes. In light of the existence of two different strip search procedures conducted at different facilities, the Court finds that it is

appropriate to divide each group into a different subclass, as defined below. Dividing the groups into subclasses will enhance the commonality and typicality requirements as to each subclass. As divided, the claims of each subclass raise factual and legal questions that are common to the class, requiring the same or similar arguments to prosecute their claims as would be made by members of the proposed class. Accordingly, the commonality and typicality requirements are met.

### E. *Adequacy of Representation*

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." Adequate representation depends on two factors: (a) the plaintiffs' attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the class members must not have interests antagonistic to one another. In re Joint Eastern and Southern Dist. Asbestos Litigation, 78 F.3d 764, 778 (2d. Cir. 1996).

With regard to the first factor, there is no question that plaintiffs' counsel have extensive experience in this type of complex class litigation, requiring more than a working knowledge of the applicable law. See, e.g., Williams, 2008 WL 4501918, at * 4; Mitchell, 2007 WL 1988716, at *6; see also Kelsey v. County of Schoharie, 2007 WL 603406 (N.D.N.Y. February 21, 2007), rev'd, 567 F.3d 54 (2d Cir. May 22, 2009) (process for exchange of personal clothing for prison clothing under observation of corrections officer in the manner described by plaintiffs does not fall within prohibitions established by Circuit precedents relating to strip searches). Counsel have also adequately demonstrated that they have done a significant amount of work in identifying and investigating potential

claims, and there can be no question that they have already committed substantial resources to representing the class. See, e.g., In re County of Erie (Erie I), 473 F.3d 413 (2d Cir. 2007); In re County of Erie (Erie II), 546 F.3d 222 (2d Cir. 2008). Rule 23(g)(1) requires the Court to consider the following factors in appointing class counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. The Court finds that the requirements of Rule 23(g)(1) have been met and counsel is competent to adequately litigate this matter on behalf of the class.

With regard to the adequacy of the class member-representatives, there is no indication that the class members would have interests antagonistic to one another. Defendants contend that Pritchard — the only proposed class representative searched at the ECCF — is inadequate because his search occurred following his arrest for a parole violation. Defendants contend that parole is a unique legal custodial status not carrying the same constitutional protections against unreasonable searches enjoyed by the rest of the proposed class. There is ample precedent from courts within the Second Circuit, including this Court, indicating that a violation of parole status does not in and of itself provide justification for a strip search upon admission to a correctional facility. Cf. Marriott v. County of Montgomery, 426 F. Supp.2d 1 (N.D.N.Y. 2006) (awarding summary judgment to class of pretrial detainees, including parole violators, who were subjected to blanket strip search policy); Dodge v. County of Orange, 209 F.R.D. 65, 77 (S.D.N.Y. 2002) (finding no basis to conclude that admission to correctional facility upon violation of probation or parole

in and of itself provides individualized reasonable suspicion for strip search); Black v. Amico, 387 F. Supp. 88, 90-92 (W.D.N.Y. 1974) (parole status of visitor to ECHC did not provide justification for strip search). In addition, in a similar class action brought by pre-trial detainees challenging strip search policies and practices at the Niagara County Jail, this Court recently certified a class which included individuals admitted to the jail after being charged with violations of the conditions of parole or probation. See Williams, 2008 WL 4501918, at *5. Accordingly, defendants' challenge to the adequacy of plaintiff Pritchard is denied.

With respect to Robinson — the only proposed representative searched at the ECHC — defendants contend that the search took place on May 15, 2004, outside the proposed class period from July 22, 2001 through May 1, 2004. Contrary to the defendants' contention, however, Robinson has testified that he was strip searched at ECHC on at least two occasions during the class period - once on February 17, 2002 and a second time on July 5, 2002. He further asserts that both of those searches occurred after being arrested on misdemeanor charges. In light of that testimony, the Court finds defendants' challenge to the adequacy of plaintiff Robinson also without merit.

### F.   *Predominance and Superior Method*

Having found that plaintiffs have met the prerequisites of Rule 23(a), the court must next determine whether plaintiffs have adequately demonstrated that common questions predominate over questions affecting individual plaintiffs, and that a class action is the best method of adjudicating this case. To meet the predominance requirement, plaintiffs must show that the issues in the action that are subject to generalized proof, and applicable to

the class as a whole, predominate over those issues that are subject only to individualized proof. See In re Visa Check/Master Money Antitrust Litig., 280 F.3d 124, 136 (2d Cir. 2001).

The Court has little difficulty concluding that the questions raised by plaintiffs regarding the existence of the alleged strip search policies at ECCF and ECHC, the constitutionality of those practices and policies, and the ultimate liability of the County and the individual defendants, are common to all potential class members and are subject to generalized, class-wide proof. These issues predominate over those issues that are subject to individualized proof. See In re Nassau County Strip Search Cases, 461 F.3d at 228. As noted by the Second Circuit in that case, "when plaintiffs are allegedly aggrieved by a single policy of defendants, such as the blanket policy at issue here, the case presents precisely the type of situation for which the class action device is suited since many nearly identical litigations can be adjudicated in unison." Id. (internal quotations and citation omitted). The division of the proposed class into two subclasses heightens the predominance as to issues common to the subclass members. See Williams, 2008 WL4501918, at * 3-4.

Moreover, as in Williams and Mitchell, the circumstances of this case make it highly unlikely that many members of the class would have the resources to pursue their claims individually in separate actions, or that separate actions would result in better outcomes for the claimants. "In light of the nature of the issues and the flexibility accorded to courts in handling class actions, it is unlikely that the management of this case as a class action will present inordinate difficulties." Mitchell, 2007 WL 1988716 at *5.

Accordingly, the Court finds that common questions predominate over questions affecting individual plaintiffs, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### G. *Rule 23(c)(4)*

Having determined to certify the class under Rule 23(b)(3), the Court need not consider whether partial certification under Rule 23(c)(4) would also be appropriate. In re Nassau County Strip Search Cases, 461 F.3d at 230 n. 4.

### H. **Subclasses Defined**

Having determined that all of the requirements for class certification have been met, the Court hereby certifies the class as follows:

> All persons who have been placed into the custody of the Erie County Correctional Facility and/or the Erie County Holding Center after being charged with misdemeanors, violations, violations of probation or parole, traffic infractions, civil commitments or other minor crimes and were strip searched upon their entry into the Erie County Correctional Facility and/or the Erie County Holding Center pursuant to the policy, custom and practice of the Erie County Sheriff's Department and the County of Erie. The class period commences on July 22, 2001 and extends until May 1, 2004. Specifically excluded from the class are Defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees or assignees;
>
> *Subclass A*
>
> All class members who were placed in the custody of the Erie County Holding Center during the class period;
>
> *Subclass B*

All class members who were placed in the Erie County Correctional Facility during the class period.

## II. Motion to Strike

Defendants have also filed a motion to strike certain matters contained in plaintiffs' submissions offered in support of the renewed motion for class certification. Specifically defendants request that the Court issue an order striking from the record Exhibit Y attached to Item 236 (Keach Affidavit In Support of Renewed Motion), which is a memorandum of law from plaintiffs' prior motion to compel. The prior motion sought production of privileged e-mail communications which the Second Circuit has since held to be protected by the attorney-client privilege and not subject to any waiver. See Erie I and Erie II, supra. Defendants also request that the Court strike from plaintiffs' memorandum of law in support of the renewed motion statements suggesting that Sheriff's Department Officer Lisa Jenkins coached deputies to testify at their depositions that no strip searches were being conducted at the ECHC.

Notwithstanding ample opportunity to do so, plaintiffs have not responded to defendants' motion to strike. Accordingly, the motion is granted.

## **CONCLUSION**

For the reasons stated herein, the Court grants plaintiffs' renewed motion for class certification (Item 235), and it is therefore

ORDERED that the following class is certified pursuant to Fed. R. Civ. P. 23(b)(3):

All persons who have been placed into the custody of the Erie County Correctional Facility and/or the Erie County Holding Center after being charged with misdemeanors, violations, violations of probation or parole,

-13-

traffic infractions, civil commitments or other minor crimes and were strip searched upon their entry into the Erie County Correctional Facility and/or the Erie County Holding Center pursuant to the policy, custom and practice of the Erie County Sheriff's Department and the County of Erie. The class period commences on July 22, 2001 and extends until May 1, 2004. Specifically excluded from the class are Defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees or assignees;

*Subclass A*

All class members who were placed in the custody of the Erie County Holding Center during the class period;

*Subclass B*

All class members who were placed in the Erie County Correctional Facility during the class period;

and it is further

ORDERED that plaintiffs' attorneys of record are appointed as class counsel pursuant to Rule 23(g); and it is further

ORDERED that plaintiffs shall have 60 days from the date of this Order to identify and move for the addition of another representative of the class members who were searched upon admission to the Erie County Correctional Facility, in particular, one who was not on parole at the time; and it is further

ORDERED that defendants' unopposed cross-motion (Item 247) to strike certain portions of the submissions made by plaintiffs is granted. The Clerk of the Court is directed to take the steps necessary to remove from the record Exhibit Y attached to Item 236, and to remove from the record Item 249 (Memorandum of Law in Support of Plaintiffs' Renewed Motion for Class Certification) in its entirety, and plaintiffs are directed to re-

submit Item 249 deleting any reference to Sheriff's Department Officer Lisa Jenkins; and it is further

ORDERED that this case is referred back to Magistrate Judge Hugh B. Scott for all pretrial proceedings pursuant to 28 U.S.C. Section 636(b)(1)(A) and (B), all pre-trial matters in this case are referred to the above-named United States Magistrate Judge, including but not limited to: (1) conduct of a scheduling conference and entry of a scheduling order pursuant to Fed. R. Civ. P. 16, (2) hearing and disposition of all non-dispositive motions or applications, (3) supervision of discovery, and (4) supervision of all procedural matters involving the aforementioned or involving the preparation of the case or any matter therein for consideration by the District Judge. The Magistrate Judge shall also hear and report upon dispositive motions for the consideration of the District Judge pursuant to 28 U.S.C. Section 636(b)(1)(B) and (C).

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: June 11, 2010